MITTEN MANAGEMENT, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 42494, 53990, 61861.   Promulgated December 15, 1933.

*William R. Spofford, Esq.*, for the petitioner.
*Mason B. Leming, Esq.*, for the respondent.

### OPINION.

BLACK: At the hearing in these cases a number of issues raised by the pleadings were withdrawn and others were settled by stipulation, leaving for our consideration and determination the following:

1. Whether the petitioner may deduct as an ordinary and necessary business expense in the year 1926 the sums of $175,612.52 and $35,590 paid to depositors and stockholders of the insolvent Producers & Consumers Bank of Philadelphia, under the circumstances narrated in our findings of fact.

2. Whether the amount of $100,000 advanced by the petitioner to T. E. Mitten for research and development of an air transport service is deductible either as an ordinary and necessary business expense for 1926 under section 234 (a)(1) of the Revenue Act of 1926, or as a loss sustained during the taxable year under section 234 (a)(4) of that act.

3. Whether the amounts of $67,732.95 and $21,654.64 expended by the petitioner during the years 1927 and 1928, respectively, for commissions on the sale of stock of the Mitten Bank Securities Corporation may be deducted as ordinary and necessary business expenses under section 234 (a)(1) of the Revenue Act of 1926 and section 23 (a) of the Revenue Act of 1928.

We will discuss these issues in the order of their statement.

### Issue No. 1.

In support of its contention that the amounts paid the depositors and stockholders of the insolvent Producers & Consumers Bank in 1926, represent ordinary and necessary business expenses within the meaning of section 234 (a) (1) of the Revenue Act of 1926, petitioner cites, as one of its leading cases, *Harris* v. *Commissioner*, 48 Fed. (2d) 187.

In that case the taxpayer was the owner of a large department store in Dallas, Texas, and had effected a composition with its creditors by which it was relieved of a large amount of indebtedness. Its credit with banks thereafter was impaired, and in order to reestablish its credit it paid off the balance of the indebtedness voluntarily.

It claimed deductions for these payments. The Circuit Court of Appeals for the Fifth Circuit allowed the deductions on the ground that the expenditures were made to rehabilitate the taxpayer's credit and were ordinary and necessary business expenditures within the meaning of the applicable statute. In that case the court, among other things, said: "Each case depends for decision upon its own facts and it would be impossible to formulate a uniform rule to govern all cases."

The facts in the instant case are altogether different, as we view them, from those in the Harris case, *supra.* Whether, if the new bank had made the payments here in question out of its first profits as agreed upon in the contract detailed in our findings of fact, the payments would have been deductible as ordinary and necessary business expenses under *Harris* v. *Commissioner*, *supra*, and other cases cited by petitioner in brief, we are not called upon to decide. It is sufficient to say that the payments in question were not made by the new bank out of its first profits as the original agreement provided, but were made by the petitioner, Mitten Management, Inc., out of its own earnings.

The payments were made in the same year that the new bank was organized. They were voluntarily made by petitioner and we do not think the circumstances of their payment warrant their deduction as ordinary and necessary business expenses. A voluntary agreement to pay the expenses or obligations of some one else does not entitle the taxpayer to a deduction. Such a promise could rise no higher than a voluntary assumption of an obligation of another and such assumption does not come within the revenue act as an ordinary and necessary business expense. *Robinson* v. *Commissioner*, 53 Fed. (2d) 810; *Natl. Bank of Commerce* v. *Allen*, 223 Fed. 472; certiorari denied, 239 U.S. 642; *Porter* v. *United States*, 27 Fed. (2d) 882.

Petitioner's principal argument in support of its contention, that the expenditures in question should be allowed as ordinary and necessary business expenses, is to the effect that by making the voluntary and generous payments at Thanksgiving and Christmas time it secured widespread and favorable publicity in the Philadelphia newspapers and that as a result of this favorable publicity and also the good feeling which was created among the depositors and the stockholders of the old bank, the feeling of organized labor toward petitioner was changed from one of open hostility to one of pronounced friendship.

We think the evidence fully justifies petitioner's contention that valuable good will amongst the ranks of organized labor was created by these payments, not only for the newly organized bank, the Mitten Bank & Trust Co., but for petitioner as well in its management of

public utilities. Nevertheless we do not believe the expenditures in question were such as is contemplated by the Revenue Act of 1926, which in section 234 (a) (1) allows a taxpayer as deductions " all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

. In *Thomas H. Welch*, 25 B.T.A. 117, the taxpayer, in order to reestablish his credit and to secure customers for his individual business from among those who had been customers of a corporation of which he was an officer, partially reimbursed those who had sustained losses when the corporation was discharged in bankruptcy. On these facts we held that the amounts so paid were not deductible by the taxpayer as ordinary and necessary business expenses. In affirming our decision at 63 Fed. (2d) 975, the court, in speaking of the voluntary payments which the taxpayer had made, said:

There may be room for argument and difference as to whether payments of this character, under the circumstances here, are " necessary " or not. It would be rather clear that they would be helpful in a business way and that helpfulness might approach or reach necessity. However, we can see no possible basis upon which payments of this character can be treated as " ordinary " expenses of his business (*Robinson* v. *Commissioner*, 53 Fed. (2d) 810, *Lloyd* v. *Commissioner*, 55 Fed. (2d) 842, and *Hubinger* v. *Commissioner*, 36 Fed. (2d) 724). In fact they are very extraordinary payments and not expenses of the business at all. They are unlike the payments in *Harris* v. *Lucas*, 48 Fed. (2d) 187, but are voluntary payments similar to those treated in *Robinson* v. *Comr.*, 53 Fed. (2d) 810, and *Mastin* v. *Commissioner*, 28 Fed. (2d) 748. While these payments are highly commendable from an ethical standpoint, we are bound by the law as written. The determination of the Board was correct and the petition for review must be and is dismissed.

This case was recently affirmed by the Supreme Court of the United States. See *Welch* v. *Helvering*, 290 U.S. 111.

Under the authorities above cited, we sustain respondent in his disallowance of the claimed deductions embraced in assignment of error No. 1.

### Issue No. 2.

Petitioner claims the right to deduct $100,000 which it advanced to its president, T. E. Mitten, in 1926 to make investigations with reference to the installation of a commercial aviation service to be operated by a subsidiary of the P.R.T.

Such facts as there are with reference to this item have been stated in our findings of fact. We do not believe these facts are sufficient to justify us in allowing the claimed deduction either as an ordinary and necessary business expense or as a loss.

Petitioner does not claim it made any investment in the stock of the Philadelphia Rapid Air Service, Inc., or advanced it any money. What it does claim is that prior to the launching of the venture

it advanced its president, T. E. Mitten, $100,000 and that he went to Europe in company with his brother, A. G. Mitten, and a secretary and made extensive investigations of aircraft and commercial aviation over there and on his return to the United States continued these investigations. No evidence was introduced showing how much of this $100,000 was spent in Europe and how much of it was spent in the United States. In fact no itemization of any kind as to how this $100,000 was spent was introduced in evidence.

Petitioner is a corporation with only a nominal capital stock, but earned very large fees in the taxable years from management services rendered to public utilities. The salaries which it paid its officials, especially its president, were large. For 1926 its president, T. E. Mitten, received $299,272.06 salary, and for each of the years 1927 and 1928 he received $300,000 as salary. Respondent has allowed these salary deductions to petitioner. But to say that a corporation can advance its president $100,000 and then claim it as a deduction for ordinary and necessary business expenses without any sort of itemization is going beyond what we think the law allows.

The finding of the respondent in disallowing this item is prima facie correct and we do not think the petitioner has sustained the burden to show its error, or to establish the correct amount to be deducted. We know of no law which authorizes us to hazard a guess at it. We have examined the cases of *Cohan* v. *Commissioner*, 39 Fed. (2d) 540; *Julia Dahl et al., Executors*, 24 B.T.A. 1167; *R. P. Shea*, 24 B.T.A. 798; and *A. F. Rees*, 21 B.T.A. 698, cited by petitioner, and do not consider them decisive of this case. They were cases of individuals claiming deductions for expenses for travel and entertainment under section 214 (a), Acts of 1924 and 1926, which expressly provides for such deductions. In those cases the individuals were present at the hearings and testified under oath as to the approximate amounts expended and for what purpose.

Neither do we think that petitioner is entitled to take this $100,000 as a deduction for a loss in 1926. As we have already stated, petitioner did not have any investment in the capital stock of the Philadelphia Rapid Air Service, Inc., nor did it advance it any money. It had no capital investment, so far as we can see, in the aircraft enterprise. It did have a management contract with the Philadelphia Rapid Air Service, Inc., from which it collected in 1926 the sum of $2,013.26 which it returned as income. This was not a dividend on a capital investment, but was payment for services rendered.

We sustain respondent in his disallowance of this claimed deduction of $100,000.

*Issue No. 3.*

This assignment of error relates to commissions paid in 1927 and 1928 to employees of the P.R.T. for sale of stock of the Mitten Bank Securities Corporation, an investment trust. The evidence shows that the sale of the stock in the Mitten Bank Securities Corporation was conducted by petitioner at its own expense. The stock was sold to the public and to employees of Mitten managed properties. Petitioner paid a commission of $1 per share to P.R.T. employees for selling the stock.

The petitioner, as we view it, was merely acting as a broker or agent in these transactions, which it had the right to do under its articles of incorporation, and any expense it incurred in making a sale of the stock was a business expense. It seems clear that if petitioner had been receiving a commission for selling the stock of the Mitten Bank Securities Corporation it would have had the right to deduct from its income the selling expenses of such stock. In the instant case the petitioner charged no commission for selling the stock of the Mitten Bank Securities Corporation, but made its profit from the use of the money derived from such sales.

On these facts we think petitioner is entitled to deduct the commissions which it paid P.R.T. employees for selling the stock. The transactions occurred in the regular course of the business carried on by petitioner. This is not a case of a corporation selling its own stock. In that case the cost of selling stock is a capital expenditure and is not deductible.

On Issue No. 3 we sustain petitioner.

It was stipulated that petitioner's income from net management fees should be reduced by $57,461.78 and $92,249.30 for 1926 and 1927, respectively, and should be increased by $58,819.61 for 1928. Due to this stipulated increase in income for the year 1928, the respondent, upon permission granted, filed a claim for increased deficiency for the year 1928. Effect will be given to these stipulations in a redetermination of the deficiencies and if on redetermination it is disclosed that there is an increased deficiency for 1928 it will be allowed.

*Decision will be entered under Rule 50.*