## MERCHANTS NAT. BANK OF MOBILE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8401.

Circuit Court of Appeals, Fifth Circuit.

May 26, 1937.

Geo. E. H. Goodner, of Washington, D. C., for petitioner.

Berryman Green and Sewall Key, Sp. Assts. to the Atty. Gen., James W. Morris, Asst. Atty. Gen., Morrison Shafroth, Chief Counsel, Bureau of Internal Revenue, and J. E. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

This petition for review involves a small amount of taxes, and the question it presents is neither new nor difficult. It is whether certain contributions or donations the petitioner bank made to the Community Chest, and to other activities,[1] were ordinary and necessary business expenses and deductible as such under section 23(a), Revenue Act of 1928 (26 U.S.C.A. § 23 and note), and Treasury Regulation No. 74 promulgated under its authority. Two other contributions, to the Mobile Carnival Association and to the Mobile Greater Gulf Coast Fair Association, were allowed. The ones in question in this petition were disallowed for want of proof that within the meaning of the statute and regulations they were incurred as ordinary and necessary business expenses, looking to and resulting in direct benefit to petitioner.

In Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367, the disallowance of a Community Chest donation was approved on the ground that whether the donation was made as a consideration for a benefit flowing directly to the donor as an incident to its business was a fact question, and that the finding of the Commissioner that it was

[1] Community Chest of
Mobile .........$3,500.00
Mobile Winter Fox
Hunt Club....... 31.00
Little Sisters of the
Poor ........... 25.00
U. J. Robinson,
Christmas Dinners 100.00
Santo Domingo Hurricane Relief..... 250.00
____
$3,906.00

not a business expense was supported by the evidence. But it was further said that there was no evidence before the Board which would support a finding that it was a direct business expense.

In Helvering v. Evening Star Newspaper Co. (C.C.A.) 78 F.(2d) 604, 605, a finding of the Board that a Community Chest donation was an ordinary and necessary business expense was reversed for want of evidence to support it. It was reversed because the evidence did not support the conclusion that the donation "legitimately represented a consideration for a benefit flowing directly to the corporation as an incident of its business."

We think it may be stated generally that the ordinary donation to a Community Chest, as these donations are made in American Community Chest drives, is in its nature not an ordinary and necessary business expense, given in "consideration for a benefit flowing directly to the donor as an incident to its business." The general scheme and purpose of Community Chest organizations and the method employed in obtaining donations to them, negative the idea that contributors are looking for or expecting a direct benefit flowing therefrom. The public interest enlisted in campaigns put on in connection with the raising of funds, the nature and character of the appeals, and solicitations to secure contributions, the attitude of the public toward the Chests in subscribing to them, and toward those who subscribe, flatly and completely negative the idea that, in making contributions, business organizations are laying out money as business expenses from which they expect direct financial return. Contributors to the Chests must, when they come to make out their income tax returns, take the position with regard to their contributions that they took when they were being made, that they were contributions by the able, to a general community provision for worthy causes, including the benefit of those unable. During the campaign petitioner would have been the last to advance the idea it now advances, that the donation was being made by it with an ulterior purpose of direct pecuniary gain. During the campaign such a purpose would have been strongly scouted. Nothing in the evidence at all tends to show that the donation was made for such purpose. There is no evidence that petitioner obtained any direct business benefits from its contribution to the Chest; none that any solicitation was made on that basis, either by offers of deposits or threats of taking them away. The effect of the bank's proof at its best for its contention is merely that it thought it good business, as well as good charity, to make donations to certain causes. It is plain, though that the benefit to its business from such donations was not direct, but very indirect.

The other items claimed fall within the same category, are governed by the same principles. It is certainly true that the evidence supports the view that it was good business for the bank to make the contributions which it did make, or rather, that it would have been bad business for it not to have made them, but the good effect of making, and the bad effect of not making, them would have been felt not immediately and directly, but remotely and indirectly as a general persistent and persuasive influence, rather than as a direct consideration paid or withheld. This is but to say that there are many things in the nature of community help which a business can do or leave undone, which indirectly affect it, and that a generous, a public spirited attitude, expressing itself in contributions and donations to worthy local causes, is a business asset to a bank, while the opposite attitude is a handicap.

It may well be argued that Congress ought to encourage this liberality of spirit. by extending to corporations the right, already granted individuals, to take donations as deductions, but Congress has denied corporations that privilege. They may not, then, take donations as business expenses merely because the attitude of kindly good will they exhibit is an undoubted, though indirect, business asset. None of the donations claimed as business expenses were made upon the understanding that there was to be a quid pro quo. None of them was conditioned on a direct business return. If they had been so conditioned, they would have defeated the very purpose, the creation or maintenance of a general community good will, for which they were given. They would if so conditioned before long have brought about the loss of the indirect asset value their cheerful, voluntary giving undoubtedly created.

The judgment of the Board is affirmed.