**WILLCUTS et al. v. MINNESOTA TRIBUNE CO.**

No. 11270.

Circuit Court of Appeals, Eighth Circuit.
April 18, 1939.

Rehearing Denied May 9, 1939.

948

Paul S. McMahon, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., and Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for appellants.

Arnold L. Guesmer, of Minneapolis, Minn., for appellee.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

In computing its corporate gross income tax for the years 1924 to 1928 inclusive the Minnesota Tribune Company claimed three items of deduction under section 234 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 41, and section 23 of the Revenue Act of 1928, c. 852, 45 Stat. 791, 799, 26 U.S.C.A. § 23. They were not allowed by the Commissioner; paid under protest; and this action brought against the Collector to recover them. Judgment was rendered in favor of the taxpayer and the government appeals.

For convenience the facts and issues respecting each of the three items will be considered separately.

1. *The Purchase of the Daily News.* The appellee is a corporation. It owns and publishes the Minneapolis Tribune, a daily newspaper. On June 26, 1923, it entered into a contract with the publishers of the Minneapolis News by the terms of which the Tribune purchased the entire circulation, the circulation lists, trade names, advertising lists and certain supplies of the News. In consideration for the title to these properties and rights the Tribune agreed to assume the payment of a note obligation of the News in the sum of $38,043.23, to pay $1000 in cash, and to deliver the Daily Tribune to all paid-in-advance subscribers to the News for the unexpired part of the terms of their several subscriptions. These ran for periods of from one to five years, and in some instances longer. The publishers of the News retained all money collected by them on these paid-in-advance subscriptions and none of it passed to the Tribune. The agreement to deliver the Tribune for the unexpired portion of the News subscriptions constituted a part of the purchase price of the News.

In recording its obligation to fill the prepaid News subscriptions by delivery of the Tribune the appellee estimated the value of the unexpired portion of these subscriptions at the Tribune subscription rate of $5 per year. Computed on this basis the resulting figure amounted to the sum of $164,608.86. This was, of course, a purely fictitious sum. No cash had been received from this source and no subscription income was expected until new subscriptions to the Tribune were acquired as a result of the expiration of those for the Daily News. However, the appellee treated this amount in its accounts as though it represented paid-in cash subscription money. Accordingly this sum was carried into its income account by crediting that account at the end of each month with 41.66¢ for each News subscriber to whom the Tribune had been delivered for that period. This practice was followed during the taxable years involved. The appellee's witnesses testified that this accounting method was used be-

cause the Tribune regarded these News subscriptions as having a definite value. The increased circulation resulted in additional advertising revenue. There was also the contingency of adding a new subscriber to the Tribune on the expiration of the Daily News subscription. But whatever the reason, a total of $164,608.86 of purely fictitious income was carried into the appellee's income account during the taxable years involved and included in the computation of net income in its income tax returns for these years.

Whenever a new subscription to the Tribune was not obtained on the expiration of that for the Daily News the appellee "reversed out" of its accounts the amount of fictitious income originally credited as arising from that particular News subscription. Its theory was that events had demonstrated the worthlessness of the original credit. The reversal was accomplished by calculating the period of the News subscription at the rate of 41¢ per month and deducting the total from gross income. Thus amounts that had been filtered into the income account over a period of several years were deducted in one lump sum. The following deductions in the aggregate amount of $112,407.54 were taken from the appellee's gross income:

| | |
|---|---|
| 1924 | $49,438.00 |
| 1925 | 12,053.26 |
| 1926 | 19,969.55 |
| 1927 | 14,640.49 |
| 1928 | 16,306.24 |

The appellee made no claim for refunds based on erroneously reported income. It however claimed the right to enter the above amounts as deductions from gross income in computing its income tax for these years. The Commissioner of Internal Revenue disallowed the deductions and imposed a tax on each amount at the applicable rate. This was done on the theory that these amounts were representative of the expenditures made by the appellee in carrying out its contract to furnish the Tribune to the subscribers of the Daily News; and that the expense thus incurred was a capital expenditure made for the purpose of acquiring the News Circulation and was therefore not deductible as an ordinary and necessary expense of carrying on business. Section 234 of the Revenue Act of 1926 provides that:

"Sec. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) . All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity."

The Commissioner's position may be summarized as follows: (1) That the actual cost of furnishing the Tribune to the News subscribers was approximately equal to the Tribune subscription rate for a like period; (2) that this money was spent by the appellee in the purchase of the News Circulation and was therefore a capital expenditure not deductible from gross income as an ordinary business expense; (3) that the fictitious items of income placed on the books of the appellee were offset by the deductions taken from gross income for the expense of sending the Tribune to the News subscribers; and (4) that the taxpayer is not entitled to deduct both the amounts of fictitious income reversed out of its accounts and the sums expended by it in acquiring a capital asset.

The appellee contends (1) that the expense of furnishing the Tribune to the News subscribers was not a capital expenditure but one that produced current revenue in the form of increased advertising income and was therefore properly treated as an ordinary expense of carrying on business and (2) that the government has received a tax on augmented income as a result of the inclusion of these fictitious items and should not object when they. are used to reduce income.

The trial court adopted the appellee's theory in its findings of facts and conclusions of law and entered judgment accordingly. It refused the appellant's requested finding that: "The plaintiff, when it acquired the Daily News circulation, purchased a capital asset. The price that it paid could not be deducted from its gross income. This plaintiff did when it

deducted from gross income the expense of sending the Tribune to the prepaid subscribers to the News. The fictitious item of income placed on the books of the plaintiff was offset by the deduction from gross income of the expense of sending the paper to these prepaid subscribers. It could not also deduct the item when the subscriber failed to renew."

Two questions are thus presented: (1) Was the appellee entitled to deduct the cost of furnishing the Tribune to the News subscribers as an ordinary and necessary expense of carrying on business? and (2), if so, was it entitled to deduct from its gross income in later years the reversals which represented fictitious income entered in earlier years?

■ It is well settled that the circulation of a newspaper is an intangible capital asset. Perkins Bros. Co. v. Commissioner of Internal Revenue, 8 Cir., 78 F.2d 152 and cases cited. It is equally well settled that money expended in increasing its circulation is a capital expenditure not deductible as an ordinary and necessary expense of carrying on business; and that the opposite is true of expenditures made for the purpose of maintaining but not increasing the present circulation structure. It can not be doubted, therefore, that money expended in purchasing the circulation of a newspaper must be held to be a capital expenditure. Perkins Bros. Co. v. Commissioner of Internal Revenue, supra; Public Opinion Pub. Co. v. Jensen, 8 Cir., 76 F.2d 494; Meredith Pub. Co. v. Commissioner of Internal Revenue, 8 Cir., 64 F.2d 890, and see Newspaper Printing Co. v. Commissioner of Internal Revenue, 3 Cir., 56 F.2d 125.

■ In the instant case the contract of purchase specifically provided "That first parties, (the publishers of the Daily News) in consideration of the agreements of second party (the appellee) * * * hereby sell, transfer and convey to second party, its successors and assigns, the circulation of their newspaper, known as the Minneapolis News" consisting of "34,000 paid-in-advance country circulation by mail direct to subscribers", 12,500 carrier circulation within Minneapolis and 5500 circulation by street sales. Part of the expressed consideration for this sale was the appellee's agreement to deliver the Tribune to the paid-in-advance subscribers of the News for the balance of their subscriptions. Both parties agree that the cost of furnishing the Tribune to a subscriber is approximately equal to the subscription rate of $5 per year, the profit, if any, being made on advertising. If this figure represents a fairly accurate estimate of the appellee's expenditures incurred in delivering the Tribune to each News subscriber for each year of his subscription it is apparent that the appellee expended approximately $164,000 during the taxable years involved as this amount represented the value of the unexpired News subscriptions computed on the Tribune Subscription rate. Since this amount was clearly expended in the purchase of a capital asset it was not proper to deduct it from gross income in these years.

■ In disallowing the appellee's deductions or reversals out in later years of fictitious income entered in earlier years the Commissioner was of the opinion that these amounts were representative of the operating costs of furnishing the Tribune to the News subscribers for the period of their subscriptions. In this view the fictitious additions to income in these years were offset by erroneous deductions from gross income of expenditures which were in fact made for the purpose of acquiring the News circulation, a capital asset. And if the fictitious items credited to gross income were exactly equal to the expenditures deducted from gross income in each particular year it is clear that the appellee would not be entitled to recover. It may only recover by showing that it has in fact over-paid its taxes for the years involved. Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293.

■ In its findings the lower court determined that the expenditures made by the appellee in furnishing the Tribune to the News subscribers produced current revenue in the form of advertising income and were, therefore, an ordinary and necessary expense deductible from gross income. This was error. The expenditures were incurred in the purchase of a capital asset and should not have been deducted from the appellee's gross income as a business expense in computing its income taxes for these years. It was, therefore, material that the amount of the expenditures be determined and accounted for in any finding of overpayment of income taxes by the appellee.

It is true that the deductions of fictitious income disallowed by the Commissioner were not necessarily exactly representative of the appellee's expense of carrying out its contract with the Daily News Publishers in any particular year. During the last years it is probable that the greater number of the News subscriptions had expired and that the expense of delivering the Tribune to the remaining subscribers was not equal to the amount of the deductions disallowed by the Commissioner. It is also probable that the deductions were less than the actual expenditures made for this purpose in the first year or two of the existence of the contract. The record is entirely silent on this matter. The assessment of the Commissioner of Internal Revenue is, however, presumptively correct. The burden of proof was on the taxpayer to overcome this presumption and to establish that the Commissioner's action in disallowing its deductions resulted in an overpayment of taxes. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Burnet v. Houston, 283 U.S. 223, '51 S.Ct. 413, 75 L.Ed. 991; Reinecke v. Spalding, 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385; United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Lewis v. Reynolds, supra; Public Opinion Pub. Co. v. Jensen, 8 Cir., 76 F.2d 494. The appellee has not established an overpayment of taxes and the judgment as to this item must be reversed.

*2. Building Item.* On March 5, 1921, the appellee leased a certain tract of land in the city of Minneapolis for a term of 100 years. On the same date the appellee purchased the building on the land from the fee owner. The lease stipulated a fixed annual rental for the land and in addition provided that:

"It is mutually agreed between the parties and is one of the considerations of this lease and a condition of its continuance in force, that the second party (appellee) will, on or before the expiration of the fifteenth year of this lease, wreck or remove said building, now known as the Century Building, and replace the same with a new modern, fireproof office and newspaper building to cost not less than the sum of Three Hundred Thousand Dollars ($300,000), and said new building so erected and constructed by the second party, be and to remain the property of the said second party, subject to the terms and conditions hereinafter provided.

* * *

"And it is mutually understood, assented to and agreed, that if default shall be made * * * in the performance of any of the covenants and conditions herein contained which are to be paid, kept or performed by the second party, that then and in all such cases it shall be at the option and election of said first parties to declare this lease and all interest, estate, right, title and claim on the part of the second party thereunder, and in all buildings, fixtures, erections and improvements on said premises, forever forfeited and ended * * *."

The lease also contained certain provisions relative to the purchase by either party, or their successors or assigns, of the other's interest in the property at the end of the term.

In 1926 the appellee paid $25,000, to the lessor of the land in return for the release of the obligation to erect the building provided for in the lease. Aside from thus modifying the lease agreement by striking out the building clause in return for this payment, the lease remained in full force. In its income tax return for the year 1926, the appellee sought to deduct the amount of this payment as an ordinary and necessary expense of carrying on business. Section 234, Revenue Act 1926, c. 27, 44 Stat. 9. This deduction was disallowed by the Commissioner on the ground that the payment to the lessor was a capital expenditure to be prorated over the unexpired term of the lease and was not an ordinary and necessary expense deductible from income in the year paid.

The trial court concluded that the $25,000, payment to the lessor was not an investment in any capital asset but merely a sum paid by the appellee to obtain its release from a liability, viz., the obligation to wreck the Century Building and construct a new modern building in its stead. It therefore held that the deduction of this amount should have been allowed as an ordinary and necessary expense deductible from income, and judgment was entered for the appellee.

 In so holding the court erred. An expenditure made to acquire an income-producing asset is a capital expenditure and not an ordinary and necessary expense deductible from current income. Home Trust Co. v. Commissioner of In-

ternal Revenue, 8 Cir., 65 F.2d 532. We are of the opinion that the $25,000 payment made by the appellee to release itself from the obligations of the building clause in the lease did not merely release it from a liability but also resulted in the acquisition of an income-producing asset.

The appellee became the owner of the Century Building located on the leased premises at the date of the inception of the lease. Under the terms of the lease it was to be permitted to occupy and use that building on the leased premises for a period of only 15 years. On or before the fifteenth year of the lease the appellee was obligated to wreck and remove the Century Building and build a new modern office and newspaper building; and its failure to do so would have made a forfeiture of the lease possible. As a result of the payment of the sum of $25,000 to the lessor the appellee not only relieved itself of its obligation to build a new building on the property but it also acquired a new right, i. e., the right to maintain the Century Building on the premises and to occupy it as a place of business for the remaining 85 years of the lease. The payment clearly resulted in the acquisition of an income-producing asset and therefore must be held to have been a capital expenditure and not an ordinary and necessary expense deductible from income. The judgment of the lower court is reversed as to this item.

3. *The Minnesota College Item.* In 1928 the appellee made a contribution of $208.32 to Minnesota College and deducted this sum from its gross income for that year as an ordinary and necessary expense in carrying on business. The Commissioner of Internal Revenue disallowed the deduction. The appellee's contribution was made as a result of a campaign on the part of a group of business men to raise funds to enable the College to retire a debt of $35,000. The College was an advertising customer of the appellee and its donation was made to enable it to retain this source of income. In 1928 the appellee received advertising income from the College in the amount of $444.81.

The lower court held the donation to have been an ordinary business expense and judgment was entered for the appellee for this item.

The appellant contends that the benefit to the appellee, if any, resulting from this donation was too remote and indirect to warrant the court's conclusion that it was an ordinary and necessary expense. The appellee contends that it received a direct benefit in the form of advertising income. Proof of "a benefit flowing directly to the corporation as an incident to its business" is the test of whether such a donation is deductible as an ordinary expense of doing business. Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367; Merchants Nat. Bank v. Commissioner of Internal Revenue, 5 Cir., 90 F.2d 223, 111 A.L.R. 1224; Fairmont Creamery Corporation v. Helvering, 67 App.D.C. 66, 89 F.2d 810; Helvering v. Evening Star Newspaper Co., 4 Cir., 78 F.2d 604; Morgan Const. Co. v. United States, D.C., 18 F.Supp. 892; Yamhill Electric Co. v. Commissioner of Internal Revenue, 20 B. T. A. 1232; First National Bank In St. Louis v. Commissioner of Internal Revenue, 23 B. T. A. 1124, 1125; Commissioner of Internal Revenue v. F. & R. L. Lazarus & Co., 6 Cir., 101 F.2d 728.

It is a question of fact in each case whether a donation made to an institution is consideration for a benefit flowing directly to the donor as an incident of its business. Old Mission Portland Cement Co. v. Helvering, supra. In Fairmont Creamery Corporation v. Helvering, supra, a donation made to the Y. M. C. A. was allowed as a deductible on the basis of a finding that the donation was made expressly for the purpose of enabling the taxpayer to retain a certain business and that "it did retain it." In the instant case the lower court found that the College "could not have remained in business without said contributions. To keep it in business served to maintain a source of annual advertising income. Plaintiff made said payment for the purpose of continuing the College in business and continuing that source of advertising income." Such being the fact the expenditure was in consideration of "a benefit flowing directly to the corporation as an incident to its business" and was properly deductible. Contributions under circumstances similar to the one in the instant case have been held deductible as ordinary and necessary expenses of carrying on business in Fairmont Creamery Corp. v. Helvering, supra; Yamhill Electric Co. v. Commissioner of Internal Revenue, supra; and see Emery, Bird, Thayer Dry Goods Co. v. Commissioner of Internal Revenue, 20 B. T. A.

796; First National Bank In St. Louis v. Commissioner of Internal Revenue, supra. The judgment of the lower court is affirmed as to this item.

Reversed as to the Minneapolis Daily News Item and the Building Item, and affirmed as to the Minnesota College Item.