## JOHNSON v. UNITED STATES.

### No. 1195–O'C.

District Court, S. D. California, Central Division.

Nov. 29, 1941.

378

Todd W. Johnson, of Los Angeles, Cal., in pro. per., plaintiff.

Edward H. Mitchell, Asst. U. S. Atty., of Los Angeles, Cal., for defendant.

J. F. T. O'CONNOR, District Judge.

This is an action for the recovery of $7,821.89, including interest thereon, which was allegedly illegally assessed against and collected from Todd W. Johnson, the plaintiff, by the United States Department of Internal Revenue, as income tax; and also to allow a certain deduction for business expenses. The controversy is predicated upon the following facts:

During 1921 the plaintiff, Todd W. Johnson, married Esther Jeanne Johnson, and thereafter the plaintiff and his then wife accumulated considerable property, tangible and intangible, in the aggregate amount of $131,839.51. Of this $131,839.51, the sum of $77,220.44 was attributable to the wife's contribution to the community, and $54,619.07 was attributable to the contribution of the plaintiff to the community assets. All of the said property was held either as community property or under joint tenancy. On January 1, 1935, the plaintiff

and his then wife separated and this separation subsequently resulted in the entry of a final decree of divorce between Todd W. Johnson and Esther Jeanne Johnson on April 2, 1936, the interlocutory decree of divorce having been entered on April 1, 1935. Prior to the divorce, viz., on March 4, 1935, a Property Settlement Agreement had been entered into between the plaintiff and his then wife, Esther Jeanne Johnson, whereby a dissolution of the community character of the property was consummated and the property was divided as is hereinafter indicated: By virtue of the said agreement Esther Jeanne Johnson was allotted miscellaneous properties and cash in the amount of $65,919.75, representing one-half of the entire assets, and Todd W. Johnson was given an equal sum of $65,919.75 as his proportionate share. In the $65,919.75 comprising the plaintiff's one-half interest were included certain accounts receivable amounting to $52,028.45. Said accounts consisted of attorney's fees earned from the plaintiff's practice as an attorney at law, which were collected between March 4, 1935 and December 31, 1935. The income tax on the amounts collected from these accounts receivable is the principal basis of this litigation.

It is the contention of the Government, and conceded by the plaintiff in his closing reply brief, that the transaction between himself and Mrs. Johnson constituted a division or partition of the community and joint tenancy assets, and not a sale or exchange of properties. For this reason the theory of a sale or exchange of properties will not be further noted. The gift theory advanced by the plaintiff was eliminated from the record by the court at the time of trial.

The plaintiff was a member of the law firm of Johnson and Johnstone, wherein Mr. Johnson had a 75% interest, and his partner a 25% interest in the net earnings of the partnership. During the year 1935, $1,020.54 was disbursed by the partners, purportedly consisting of necessary club dues and expenses, for the purpose of securing and entertaining prospective clients and otherwise building up the business. By reason thereof the plaintiff claims a deduction of $775.40, which amount represents a 75% interest in the total partnership expenditures for the above club dues and expenses. The Government contends that this deduction should not be allowed because the expenses were not ordinary and neces-

sary and did not directly relate to the partnership business, but were merely for the personal pleasure of the plaintiff.

The two questions involved under the facts are propounded by the plaintiff in his opening brief:

(1) "What part, if any, of the fees earned by plaintiff as an attorney at law and constituting accounts receivable on March 4, 1935, when a property settlement agreement was executed by plaintiff and his then wife, and which were collected by plaintiff between March 4, 1935 and December 31, 1935, was taxable to plaintiff and what part, if any, was taxable to his then wife?"

(2) "Is plaintiff entitled to deduct as a business expense certain club dues and expenses?"

The solution to the first question requires a determination of the legal effect of the property settlement agreement, and the status of the accounts receivable subsequent to its execution.

■ Section 158 of the California Civil Code provides, in part: "Either husband or wife may enter into any engagement or transaction with the other * * * respecting property, which either might if unmarried." Section 159 also provides that: "A husband and wife cannot, by contract with each other, alter their legal relations, except as to property." Under these sections the spouses are enabled, by contract, to convert community property into separate property, and vice versa. 12 New Cal.Dig. (McKinney) 485. In consequence of the partition the community assets became the "sole and separate" property of the respective parties by the very terms of the agreement. The legal effect of the transaction was to dissolve the community and joint tenancy character of the property, and transmute the same into separate property. Therefore, the accounts receivable, in the amount of $52,028.45 became the separate property of the plaintiff and were taxable as such when collected, inasmuch as the income tax was levied on a cash basis. The plaintiff strenuously urges that he is taxable, in any event, for only $17,-166.46; this being the difference between $34,861.99 or cost basis to the community placed upon the accounts receivable and the market value of $52,028.45. This contention would be tenable if the subject matter to be taxed were derived from a source which had already been taxed and the property subsequently disposed of at a profit. But

here, the accounts receivable were original income and a capital transaction was not involved. The plaintiff is denied recovery.

■ Answering the plaintiff's second question concerning a deduction of certain club dues as a business expense, the law seems to be well settled. Section 23 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a) (1), provides: "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *," shall be allowed as deductions in computing net income. Among the many cases construing the pertinent provisions of this statute, only a few will be cited. In Louis Boehm v. Commissioner, 35 B.T.A. 1106, the Board said: "It is noted that in cases where expenditures of a social nature have been held to be deductible business expenses proof was presented to show that such expenditures had a direct relation to the conduct of a business or the business benefits expected. * * *" E. E. Dickinson v. Commissioner, 8 B.T.A. 722; Wade H. Ellis v. Commissioner, 15 B.T.A. 1075, affirmed 60 App.D.C. 193, 50 F.2d 343; Blackmer v. Commissioner, 2 Cir., 70 F.2d 255, 92 A.L.R. 982. Although most of the cases cited in the above quotation denied the requested deduction, yet the principle is the same. Whether or not certain expenditures are deductible as "ordinary and necessary" expense in a particular business, is a question of fact. Willcuts v. Minnesota Tribune Co., 8 Cir., 103 F.2d 947.

The position of the plaintiff with respect to the necessity of incurring the club dues and expenses in question is disclosed by his uncontradicted testimony. He stated: "When I left the Government service in 1929, * * * I had only one piece of business, which was to appraise a large estate for federal estate tax * * * purposes. Along the first part of 1930 I had fairly well finished the appraisement and found myself in the position of having just the one client and no others. I endeavored to contact attorneys and bankers with whom I had casual acquaintances through my work in the Government service, and found that I either couldn't get an appointment with them or if I did get one, they didn't seem to have any particular interest in what I had to talk about, which was my qualifications for assisting them in tax matters. It became apparent to me that I would have to find some means of ob-

taining their interest by getting better acquainted with them. I found that at least 50% or more of the attorneys and bankers with whom I wished to make contact were members of the Los Angeles Country Club. I therefore determined that I would join that club * * * I did this, and from that time until after 1935, I believe that every time that I went out to the club I had some particular idea in mind as to whom * * * I would attempt to become friendly with while I was there. I believe I can truthfully say that what success I have had in the legal business has been largely due to my joining the country club." The plaintiff stated he did not enjoy playing golf; that green fees and food, paid for his prospective clients, were the largest item on his monthly club bill. Plaintiff testified that he did not enjoy golf because he felt he should be working at the office. At the time of the formation of the partnership it was agreed that the club dues and expenses were to be charged as business expenses and were so charged on the books. The facts disclose that the main purpose of the plaintiff in joining the clubs was to obtain business and the plaintiff gave many names of clients secured by his partner and himself in this manner. Large fees were collected from the contacts made at the club. Several clients would not come to his office. The Government demanded and received large income taxes on the fees collected by the plaintiff as a direct result of plaintiff's expenditure in club dues, and the Government cannot refuse to allow plaintiff a deduction as a business expense of the money which produced the business. To rule otherwise would revive the fable of the goose and the golden eggs.

██ The evidence also shows that when plaintiff's partner, Mr. Johnstone, joined the Bel-Air Country Club for the same purpose, three estates were obtained through his contacts from which fees aggregated in excess of $50,000. The record further indicates that during 1935, due to insufficient help, the plaintiff worked day and night, and frequently on Saturday afternoons and Sundays, and only visited the country club when he felt it absolutely necessary. His membership was "purely from a business standpoint", and was discontinued whenever this method of obtaining business became unprofitable. Without further alluding to the evidence it will suffice to say that the expense incurred by the membership of the plaintiff and his partner in the various clubs, directly contributed to the success of the firm. Under the facts in this particular case, the plaintiff is allowed a deduction as a business expense the amount paid for club dues.