ROBERT S. HOWARD AND ANTOINETTE LEES HOWARD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62090. Filed September 28, 1959.

*Adam Y. Bennion, Esq.,* and *Stafford R. Grady, Esq.,* for the petitioners.

*Mark Townsend, Esq.,* and *Thomas S. Greaves, Esq.,* for the respondent.

1286

1294

RAUM, *Judge:* 1. *Basis of Stock.*—We are asked in this case to determine the basis to petitioner of 1,324 shares of stock distributed to him upon the liquidation of a trust and subsequently surrendered by him for redemption. Petitioner contends that, under the law as it existed in 1930, the property settlement of March 7, 1930, was a taxable sale or exchange giving rise to recognized gain. If so, the basis to the 1930 trust of the beneficial interest in stock transferred by Fannie May was its basis in the hands of Fannie May, increased by the amount of gain recognized by Fannie May on the transfer. Sec. 113(a)(3), I.R.C. 1939. Respondent, on the other hand, urges that the property settlement was a nontaxable event under the law as it existed in 1930, that no gain was recognized by Fannie May on the transfer of her beneficial interest to the 1930 trust, and, therefore, that the basis of that interest in the hands of the 1930 trust was simply its basis in the hands of Fannie May.

The record supports petitioner's view. The property settlement of March 7, 1930, was a bargained-for transaction resulting in the transfer of property rights for a consideration. Such transfers are generally treated as giving rise to taxable gain or loss, and respondent offers no sufficient reason for according different treatment to the transfer in question. *C. C. Rouse*, 6 T.C. 908, affirmed 159 F. 2d 706 (C.A. 5). Cf. *Jessie Lee Edwards*, 22 T.C. 65; *Johnson* v. *United States*, 135 F. 2d 125 (C.A. 9), reversing 45 F. Supp. 377 (S.D. Cal.). The 1930 settlement agreement was not merely a partition or division of community property, as suggested by respondent. Cf. *Frances R. Walz, Administratrix*, 32 B.T.A. 718. In view of the agreement of October 2, 1916, wherein Fannie May waived and disclaimed any community interest in property belonging to her husband, it is doubtful whether any of the property transferred pursuant to the 1930 agreement was in fact community property. Secondly, the evidence indicates that in 1930 Charles S. Howard was primarily interested in acquiring control of the Los Angeles corporation; and the cash and bonds transferred by him pursuant to the 1930 agreement represented merely the price that he paid for the stock. Moreover, even if there were community property, it does not appear that any such property was divided in kind, or that the parties attempted to inventory such property and make an equitable division thereof.

Respondent relies heavily upon the Memorandum Opinion of this Court in *Fannie May Herrscher* (dated May 10, 1939), holding

that the $500,000 paid to Fannie May pursuant to the settlement of May 6, 1931, did not constitute ordinary income to her. However, that case was concerned not with the *recognition* of gain but with the realization of ordinary income upon receipt of the $500,000, since respondent did not allege a sale or exchange of property under the 1931 agreement and Charles S. Howard specifically denied the existence of any community property rights in Fannie May. The question in the present case relates to the recognition of gain to Fannie May upon the transfer of property by her for a consideration. In the earlier case, respondent did not raise the issue of sale or exchange v. division of community property—the issue now before us—and the Court did not appear to consider that issue. In the circumstances, we do not regard it as controlling here.

Respondent's further argument is based on the fact that neither Charles S. Howard nor Fannie May reported any tax liability resulting from the 1930 agreement. He contends that "as no gain was reported, no gain was 'recognized.'" The argument is unsound. Every revenue act since the Act of 1924 has specified that upon the sale or exchange of property the entire amount of gain or loss shall be "recognized," except as otherwise provided. Revenue Acts of 1924 and 1926, sec. 203(a); Revenue Acts of 1928, 1932, 1934, 1936, I.R.C. 1939, sec. 112(a); I.R.C. 1954, sec. 1002. Thus recognition of gain or loss depends upon statutory provision and not upon whether such gain or loss is reported.

The fair market value of the stock in question was $438.29 per share on December 31, 1929. Since respondent does not deny that Fannie May received full and adequate consideration in money or money's worth for her beneficial interest, we find that the basis to the 1930 trust of the beneficial interest thereby transferred was "at least $402.10 per share," as urged by petitioner. The basis to petitioner, as a distributee of the 1930 trust, is the same as it was to the trust. Cf. *Richard Archbold*, 40 B.T.A. 1238, affirmed 115 F. 2d 1005 (C.A. 2), certiorari denied 313 U.S. 584.

In view of the foregoing conclusions, we need not consider other issues relating to the fair market value of the business on July 1, 1920.

2. *Deductibility of Legal Fees.*—The amounts expended by petitioner in connection with the investigation conducted by the Racing Board were deductible under section 23(a), I.R.C. 1939, as ordinary and necessary business expenses. Petitioner was in the horseracing business and the investigation was directly concerned with the artificial stimulation of certain horses owned and raced by petitioner. We are not persuaded by respondent's argument that petitioner "voluntarily" assumed Engle's defense and, therefore, that the expenses

incurred were not ordinary and necessary to his business. Petitioner himself was under suspicion, as was anyone having access to the stables where the horses in question were kept. Had petitioner's license been revoked he would have been out of the horseracing business altogether. It may be true that the expenses were incurred on Engle's behalf as well as petitioner's, but Engle was an important employee of petitioner's and his implication in the charges affected petitioner's business reputation. From petitioner's point of view, the expenses were in defense of his business generally. So characterized, there is no burden on petitioner to allocate any portion of his expenses to the defense of Engle in particular.

We see no merit in respondent's argument that petitioner's expenses resulted from acts of an employee performed outside the scope of his employment. The scope of Engle's employment clearly included the duty to care for and attend petitioner's horses; it was precisely a breach of that duty that resulted in the revocation of his license. Cf. *San-Knit-Ary Textile Mills, Inc.*, 22 B.T.A. 754.

Nor do we accept respondent's contention that allowance of the deduction would frustrate the public policy expressed in sections 1930, 1508, and 1936, title 4, California Administrative Code, pursuant to which Engle's license was revoked. As concluded above, the amount expended by petitioner was in defense of his business generally, and petitioner himself was completely exonerated. To be sure, Engle was not exonerated, and had he paid his own expenses they probably would not have been deductible by him. But petitioner was blameless, and the amounts expended by petitioner in defense of himself and of his business are deductible.

3. *"Stakes to Jockeys."*—This issue must be decided against petitioner for want of satisfactory proof. The amount in controversy, $4,473, was merely a bookkeeping entry, representing a portion of payments made to certain persons who were employees (but not jockeys) of petitioner's. Deduction was claimed on the ground that the controverted payments consisted of stakes to jockeys. The evidence was fragmentary and unpersuasive. No showing was made as to any amounts paid over to jockeys, and we cannot say on this record that any portion of the amount involved was in fact paid out for a purpose that would justify the claimed deduction. Cf. *Mitten Management, Inc.*, 29 B.T.A. 569.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DRENNEN, *J.*, concurring: Based on the findings of fact in the majority opinion, I agree with the result reached in this case. However, I would make it clear that the rule relied on is applicable only

when the facts of a particular case warrant it. I would not agree that as a general rule when one spouse surrenders property owned outright by him or her to the other spouse for other property of a different kind in a negotiated property settlement incident to a divorce a taxable exchange occurs.

FISHER, *J.*, agrees with this concurring opinion.

---

TURNER, *J.*, dissenting: I am unable to agree with the conclusion that the settlement evidenced by the agreement dated March 7, 1930, was a taxable exchange. In my opinion, the settlement was an agreed division of the property of parties looking to a divorce, and was not a transaction which would give rise to taxable income or a deductible loss. I accordingly note my dissent.

MURDOCK and PIERCE, *JJ.*, agree with this dissent.