JOANNA HARRINGTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harrington v. Commissioner
Docket No. 10490-92
United States Tax Court
T.C. Memo 1994-258; 1994 Tax Ct. Memo LEXIS 262; 67 T.C.M. (CCH) 3060; June 7, 1994, Filed *262 For petitioner: John Gigounas. For respondent: Allan D. Hill. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined an income tax deficiency in the amount of $ 64,690.50 for the taxable year ended December 31, 1984, and additions to tax for that year under sections 6653(a) and 6661 in the amounts of $ 3,234.55 and $ 16,172.75, respectively. [1] The present controversy relates to the taxability of profit realized by petitioner upon a division of property between petitioner and her ex-husband at the time of their divorce. The facts have been stipulated. Petitioner resided in Atherton, California, when she filed her petition with this Court. On November 17, 1982, she filed for divorce against her husband, Walter J. Harrington, by submitting a Petition for Dissolution of Marriage with the Superior Court of the State of California, County of San Mateo. As of January 1, 1984, petitioner *263 was still legally married to Mr. Harrington, but the marital dissolution proceeding was pending in the Superior Court. On June 12, 1984, an Interlocutory Judgment of Dissolution of Marriage between petitioner and Mr. Harrington was filed in the Superior Court. A property settlement agreement was incorporated in the interlocutory judgment and became part of the judgment. One day prior thereto, on June 11, 1984, petitioner and her husband, Mr. Harrington, distributed properties to each other in accordance with the terms of the property settlement agreement incorporated in the interlocutory judgment. Among the properties transferred by petitioner to Mr. Harrington were 50-percent community interests in each of 11 different partnership interests owned by petitioner and/or her husband. As of the date of the property distribution, the fair market value of petitioner's 50-percent community interests in the partnership interests was $ 1,450,105, and her allocable 50-percent share of the aggregate of tax basis in the partnership interests was $ 902,107. The value of property interests transferred by petitioner on that date to Mr. Harrington exceeded the value of property that she received *264 from him by approximately $ 1,250,000. In order to equalize the terms of the settlement, the settlement agreement required Mr. Harrington to pay petitioner an additional $ 1,250,000 as follows: (a) $ 750,000.00 cash payable on June 1, 1984 * * *; and (b) a 5 year promissory note for $ 500,000.00 * * *, payable to petitioner in annual installments of $ 100,000.00 with the first installment payable on February 21, 1985.
Pursuant to the terms of the settlement agreement, Mr. Harrington, on June 11, 1984, paid petitioner $ 750,000 in cash from his separate property. The remaining installments totaling $ 500,000 are not at issue herein. On December 24, 1984, a Final Judgment of Dissolution of Marriage between petitioner and Mr. Harrington was filed in the Superior Court. Petitioner's 1984 return did not include in gross income any portion of the gain realized on the transfer of her 50-percent community interests in the 11 partnerships to Mr. Harrington, in accordance with the property settlement agreement. The Commissioner determined a deficiency in tax plus additions to tax under sections 6653(a) and 6661 against petitioner for 1984. The deficiency notice explained *265 the proposed adjustments as follows: 1.a. You realized a long term capital gain of $ 323,459.00 from the transfer of your property to Walter Harrington in 1984. The gain is taxable income subject to the deduction provided by Section 1202 of the Internal Revenue Code. See computations below.
Computation of gain realized
FMV of property transferred
$  1,450,105 Less: Adjusted basis
(  902,107)
Expense of Sale
[2] (    8,900)
GAIN REALIZED
539,098 Gain Recognized - 1984
Cash Received - 1984
750,000
Total Cash
1,250,000
Less: 1202 deduction (60%)
(194,075)
GAIN RECOGNIZED
129,384 *266 In view of the Commissioner's concessions in respect of various other matters (see supra note 2), the only issue remaining for decision is whether petitioner erroneously excluded the gain attributable to the transfer of her community property interests from her 1984 gross income. We hold that she did. Petitioner disputes the deficiency determination on two alternative grounds. First, she argues that the property settlement transfer qualifies for nonrecognition under section 1041. Second, petitioner contends that even if section 1041 does not apply, the property settlement nonetheless represents a nontaxable division of the community property rather than a sale of petitioner's community property interests to her ex-husband. We consider each of these arguments in turn. 1. Applicability of Section 1041
Section 1041[3] was added to the Internal Revenue Code by section 421 of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 793-795, which was enacted July 18, 1984. Section 1041(a) provides for nonrecognition of gain or loss on transfers of property between spouses or between former spouses "incident to the divorce", and, pursuant to section 1041(b), *267 the transferred property is required to be treated by the transferee as acquired by gift. The effective *268 date of section 1041 is specified in section 421(d) of DEFRA, 98 Stat. 795, as follows: (d) EFFECTIVE DATES. -- (1) IN GENERAL. -- Except as otherwise provided in this subsection, the amendments made by this section shall apply to transfers after the date of the enactment of this Act in taxable years ending after such date. (2) ELECTION TO HAVE AMENDMENTS APPLY TO TRANSFERS AFTER 1983. -- If both spouses or former spouses make an election under this paragraph, the amendments made by this section shall apply to all transfers made by such spouses (or former spouses) after December 31, 1983. (3) EXCEPTION FOR TRANSFERS PURSUANT TO EXISTING DECREES. -- Except in the case of an election under paragraph (2), the amendments made by this section shall not apply to transfers under any instrument in effect on or before the date of the enactment of this Act unless both spouses (or former spouses) elect to have such amendments apply to transfers under such instrument. (4) ELECTION. -- Any election under paragraph (2) or (3) shall be made in such manner, at such time, and subject to such conditions, as the Secretary of the Treasury or his delegate may by regulations prescribe. *269 [Emphasis added.]
To summarize, the general rule reflected in DEFRA section 421(d)(1) and (d)(3) is that section 1041 of the Code applies only to property transfers made after the date of enactment of DEFRA, which was July 18, 1984. Under the exceptions provided in DEFRA section 421(d)(2) and (d)(3), section 1041 does apply to certain pre-enactment transfers if both spouses (or former spouses) explicitly so elect. In petitioner's case, however, nothing in the record suggests that any such election was made. [4]
To determine whether section 1041 applies, one must therefore ascertain the date on which the properties at issue -- in this case, petitioner's community property interests -- were transferred for purposes of DEFRA section 421(d). And that in turn requires a determination of what is meant by the term "transfer" *270 in DEFRA section 421(d). Preliminarily, we note that when one speaks of a "transfer" of property, it is commonly understood as referring to a transaction by which such property changes hands or title. Regardless of the particular form of the transaction, e.g., sale, exchange, gift, distribution, etc., the term "transfer", at least in everyday parlance, connotes a physical delivery or divestment of legal title. We think that the term should be similarly interpreted for purposes of section 421(d) of DEFRA absent a sufficient reason to the contrary. Petitioner on brief fails to advance even a single persuasive reason for interpreting it differently. Moreover, there is precedent in this Court for interpreting the term "transfer" in the manner suggested above. In Godlewski v. Commissioner, 90 T.C. 200 (1988), the taxpayer's wife, on July 20, 1984, executed a deed in her husband's name conveying title to their home in exchange for $ 18,000. The deed was recorded on September 20, 1984, and there was no evidence in the record as to the actual delivery date of the deed to petitioner. In that case, the Court stated: to determine whether section 1041 *271 applies to the facts presented here, we must decide whether the house was "transferred" after July 18, 1984, * * *. The answer to * * * [this] question is fairly straightforward. The house was titled in Mrs. Godlewski's name and she executed a warranty deed in favor of petitioner on July 20, 1984. Since Mrs. Godlewski executed the deed on July 20, 1984, the transfer necessarily occurred after July 18, 1984. [Id. at 204.]
In the present case, the parties have stipulated that petitioner and her ex-husband divided their community property on June 11, 1984. In addition, they also stipulated that the community property was distributed in accord with the terms of the interlocutory decree and property settlement agreement that was filed the following day, June 12, 1984. It is therefore clear from the parties' stipulations that the community property at issue was "transferred", as the term was used in Godlewski, on June 11, 1984, 37 days prior to DEFRA's enactment on July 18, 1984, which was the effective date of section 1041. As already noted, section 1041 can apply to certain preenactment transfers, but only where both spouses (or former spouses) *272 explicitly so elect. And we reiterate that nothing in the record indicates that such an election was ever made. Petitioner suggests that section 1041 applies to the transfer at issue, because the property settlement agreement was part of an interim decree of divorce, which under California law did not become final until December 24, 1984, i.e., more than 5 months after the enactment date of DEFRA (the effective date of section 1041). Petitioner's brief states: Section 1041 became effective July 18, 1984, and * * * [petitioner Joanne Harrington's] divorce became final on December 24, 1984. Therefore, the division of the community property was incident to a divorce making the transfer of property from Joanne [Harrington] to [her ex-husband] Walter non-taxable. [Pet. Opening Brief at p. 12]
Petitioner is correct in noting that the final decree of divorce was entered after the effective date of section 1041. And if section 1041 were in fact applicable, the division of the Harringtons' community property would undoubtedly be considered "incident to a divorce" within the meaning of that provision. However, petitioner's argument is wholly irrelevant here. The pivotal issue *273 here is how the effective date provisions in DEFRA section 421(d) affect the applicability of section 1041 to petitioner's transfer on June 11, 1984. The fact that the final decree of petitioner's divorce was entered after section 1041 went into effect proves nothing. In determining the applicability of section 1041, by reason of the effective date provisions, the critical fact is neither the date of the final divorce decree nor the date of the interim decree, but rather the date on which the properties were transferred, namely, June 11, 1984. And that occurred prior to July 18, 1984, the date on which section 1041 of the Code became effective. We hold that section 1041 is inapplicable here. 2. Whether the Transfer Was a Nontaxable Division of Property or a Taxable Sale Under Section 1001
Petitioner contends that even if the transfer of her 50-percent community interests does not qualify for nonrecognition pursuant to section 1041, she nonetheless is not required to recognize gain on the transfer, because it amounted to a nontaxable division of community assets rather than a taxable property sale under section 1001. We disagree. In cases decided under the law in effect *274 prior to section 1041, it had long been recognized that the division of community property incident to a divorce or a property settlement is under certain circumstances a taxable event. Johnson v. United States, 135 F.2d 125 (9th Cir. 1943), revg. 45 F.Supp. 377 (S.D. Cal. 1942); Rouse v. Commissioner, 6 T.C. 908, 913-914 (1946), affd. 159 F.2d 706, 707 (5th Cir. 1947). The issue was framed in terms of whether the division represents a nontaxable partition or a taxable sale of the community property. Siewert v. Commissioner, 72 T.C. 326 (1979); Edwards v. Commissioner, 22 T.C. 65 (1954); Rouse v. Commissioner, supra; Walz v. Commissioner, 32 B.T.A 718 (1935). In Carrieres v. Commissioner, 64 T.C. 959, 964 (1975), affd. per curiam 552 F.2d 1350 (9th Cir. 1977), this Court discussed the approach to be followed in distinguishing a nontaxable partition from a taxable sale: Where community *275 property is divided so that each spouse holds as his separate property an undivided one-half interest in the whole of each asset, or an equal number of units of fungible assets (like cash) are set aside to each spouse, the conversion of the community property into separate property is nontaxable. Moreover, where the whole of certain assets of the community (including cash) is set aside to one spouse and the whole of the other assets to the other spouse, but the aggregate value of assets set aside to each spouse equals one-half the value of the entire community property, the equal division of the community is considered a nontaxable partition of the property. In the case of such a nontaxable division, the basis of the property set aside to each spouse is its basis to the community prior to the division. Not all divisions of community property are nontaxable, however. Taxable divisions of community property take one of two forms. An unequal division, where one spouse receives property having an aggregate value equal to more than half the value of the entire community property, causes recognition of gain, if any, to the spouse transferring the larger portion. Likewise, an allegedly *276 "equal division" of the community where one spouse gives his note or separate property for all or substantially all [5] of the other spouse's community property set aside to him is a recognizing transaction. * * * [Emphasis added; citations omitted.] See also Gaughan v. Commissioner, T.C. Memo. 1993-320. It is clear from the parties' stipulation of facts that the division of the spouses' community property in the present case fits the description of the second form of taxable division described above, i.e., "an allegedly *277 'equal division' of the community where one spouse gives his note or separate property for * * * the other spouse's community property". Carrieres v. Commissioner, supra at 964. The parties stipulated that under the terms of the property settlement, petitioner's husband was required, inter alia, to pay her "$ 750,000.00 cash"; that he did in fact pay $ 750,000 to her "in accordance with the terms of the [settlement] agreement"; that "The cash [he] * * * used to meet this $ 750,000.00 obligation to petitioner was not community property"; and, finally that the purpose of the $ 750,000 payment was "to equalize the fair market value of the total properties distributed to each party". Plainly, this case is governed by Carrieres v. Commissioner, supra, which reflects the case law in effect prior to the enactment of section 1041. Petitioner does not contend otherwise, and indeed specifically so recognizes in her opening brief, which states: the decided cases involving community property divisions * * * [have held that] either, or sometimes both of the following factors rendered the division taxable: (a) an unequal division *278 or (2) [sic] the division was * * * [equal] but only because it was equalized by separate property, * * * [Pet. Opening Brief at pp. 15-16; fn. refs. omitted.]
But petitioner asks us to overrule Carrieres. We decline to reject such long standing interpretation of the statute. But petitioner asks us to overrule Carrieres. We decline to reject such long standing interpretation of the statute. Moreover, petitioner's argument fails even on its own terms. She argues on brief that "From an economic point of view, an equalizing payment leaves the parties in the same position as if there was an equal division"; and that "since an equal division of community property is not a taxable event, neither should a division with an equalizing payment". (Pet. Opening Brief at pp. 17-18) Petitioner rightly states that each party leaves the table with approximately equivalent economic value, which in any event is what one would expect of any exchange transaction, taxable or otherwise. But it is a far different thing to suggest, as petitioner does, that the recipient's economic position is not altered by the receipt of cash instead of an equivalent amount of community property. *279 By receiving cash, petitioner terminated her economic stake in any future increase or decrease in value of the community property transferred. Indeed, the receipt of cash or other outside property derived from the husband's separate property is from petitioner's standpoint no different from a taxable sale to a stranger. We are unpersuaded by the "logic" of petitioner's argument, which in any event is totally unsupported by any legal authority called to our attention. We hold that the gain realized by petitioner upon the transfer of her 50-percent community interests to her ex-husband was properly taxable to her. In order to reflect concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.↩
2. Petitioner has stipulated that the allowance of $ 8,900 as an offset against sales proceeds was erroneous and should be reversed. The Commissioner has, however, agreed that petitioner should be allowed to deduct this $ 8,900 amount for legal and accounting fees, thus conceding the only other adjustment made in the deficiency notice based on the computation of the tax. The Commissioner has also conceded that petitioner erroneously included $ 60,000 as alimony income on her 1984 return, and that therefore her taxable income for 1984 should be reduced by that amount.↩
3. Sec. 1041 reads as follows: SEC. 1041. TRANSFERS OF PROPERTY BETWEEN SPOUSES OR INCIDENT TO DIVORCE. (a) General Rule. -- No gain or loss shall be recognized on a transfer of property from an individual to * * * -- (1) a spouse, or (2) a former spouse, but only if the transfer is incident to the divorce.
(b) Transfer Treated As Gift; Transferee Has Transferor's Basis. -- In the case of any transfer of property described in subsection (a) -- (1) for purposes of this subtitle, the property shall be treated as acquired by the transferee by gift, and (2) the basis of the transferee in the property shall be the adjusted basis of the transferor.
(c) Incident To Divorce. -- For purposes of subsection (a)(2), a transfer of property is incident to the divorce if such transfer -- (1) occurs within 1 year after the date on which the marriage ceases, or (2) is related to the cessation of the marriage.↩
4. Indeed, it is doubtful whether petitioner's ex-husband would have agreed to join in any such election since he would be burdened by petitioner's lower basis in the property transferred to him.↩
5. A later case expands the range of taxable transfers by stating that the note or other separate property need not be received for all or substantially all of the community assets but instead only "for a substantial portion" of such community assets. See Siewert v. Commissioner, 72 T.C. 326, 333 (1979), which refers to and follows the methodology of Carrieres v. Commissioner, 64 T.C. 959↩ (1975).