## PERRY BROS. VS FARRIMOND.

## Opinion delivered October 19, 1904.

1. *Estoppel—In Pais—Acceptance of Appraisement.*

> Where plaintiff sold his improvements in and about a mine to defendant at a price to be determined by a subsequent appraisement, the possession of same was given and the appraisement made and for seven months partial payments were made to plaintiff without objection to the appraisement by defendants, plaintiff had a right to assume that the appraisement was accepted as correct and to rely upon it, and defendants are estopped from claiming it to be incorrect or repudiating it in any way.

2. *Estoppel—In Pais—Acceptance of Benefit of Work.*

> Plaintiff had been engaged in working a mine of defendants under contract with them, and subsequently turned said mine back under an agreement for the purchase of plaintiff's improvements by defendant, and months after the mine was turned back to defendants they sought to resist further payment to plaintiff for his improvements claiming damage to the mine. *Held,* that defendants were estopped from claiming damages on account of alleged improper operation of the mine after holding the mine for such period of time and receiving the benefit of plaintiff's work, without previous objection.

3. *Pleading—Equitable Estoppel Invoked Without Being Pleaded.*

> In order to invoke the operation of an equitable estoppel or estoppel in pais, it is not necessary that same be pleaded.

Appeal from the United States Court for the Central District.

WILLIAM H. H. CLAYTON, Judge.

Action by Daniel Farrimond against Perry Bros. Judgment for plaintiff. Defendants appeal. Affirmed.

On November 14, 1899, the appellee (plaintiff below) filed his complaint in equity against appellants (defendants below), and for cause of action states that on the 25th day of June, 1897, plaintiff entered into a written contract with defendants, by which they leased to plaintiff a certain coal mine property in the town of Coalgate, Ind. Ter., known as the "Dead Horse Mine"; that he took possession of said mine and continued to operate said mine under said agreement until the 22d day of June, 1898, at which time the agreement was renewed and additional undertakings stipulated for, and that he then continued to operate said mine under said contract as renewed until the 4th day of March, 1899; that on that date the plaintiff had been operating the said mine about two years, and had sunk an air course and driven an entry, laid certain track or tramway in said mine, excavated and built an artificial lake or pond to furnish water supply for the engine boilers, and had added certain other improvements, and had on hand at said mine certain materials and supplies. On same day plaintiff sold to defendants his improvements, as follows: "It is hereby understood and agreed that I sell out to Perry Bros. my entire improvements in the Dead Horse Mine, and to be appraised by us later. They are to pay me at the rate of 3 ct. per ton until I am all paid. I am to receive said payment each month as they pay their men, and I hereby turn over to them all my improvements, etc., at said mine, on the above condition. The improvements are stated to be about $900.00. In case of default I reserve the right to withdraw all my improvements, material, etc. Witness my hand this 4th day of March, 1899. Daniel Farrimond. Perry Bros." On the 8th day of March, 1899, defendants appointed Frank Jewett, who was then acting as pit boss for them, to go with plaintiff and appraise or measure said improvements, such as were not of known value or extent, and that they went into the mine and measured the air course made by the plaintiff, and found that he was entitled to pay for 193 yards of air course,

and that he was entitled to pay for 192 2-3 yards of entry driving, and for 2,235 feet of lumber in wood rails. Appellee says that the remainder of his interest, consisting of ties, props, and other materials, was of known value and amount, situated around the mine, together with a pond of water dug by him. He alleges that Jewett turned in his estimate to appellants on the same day it was made, and on March 10, 1899, two days afterwards, appellee gave appellants a copy of the appraisement made by him, which he says "was accepted by them without any remonstrance or objection whatever thereto." In this estimate of plaintiff the total amount of his interest is placed at $904.77. Plaintiff further alleges that thereafter, on the first pay day, defendants commenced to pay plaintiff said amounts as provided in the contract of sale, 3 cents per ton on each ton of coal mined, and continued to do so until the 7th day of October, 1899, paying him the sum of $298.53, and giving him in addition a team of mules valued at $65, in all amounting to $363.53. Whereupon defendants refused to make further payments unless plaintiff would accept the sum of $33 in full. The balance due plaintiff, as he alleges, is $541.24. Plaintiff states that defendants have used said mine and improvements from March 4, 1899, continuously, and mined about 100 tons of coal per day; that they appropriated the materials and supplies of plaintiff, and well knew that plaintiff's interest was of the value of $900, and accepted the appraisement, and by said "acceptance and the use of said betterments, and payment thereon, led this plaintiff to believe that they would pay said nine hundred and four dollars as appraised, and made no intimation whatever to the contrary until as aforesaid, and at such a late day as that the withdrawal of the plaintiff's betterments would not serve to compensate him for his interest in said mine." Plaintiff claims a lien on the output of said mine of 3 cents per ton, and alleges that defendants are hopelessly insolvent, and asks for appointment of a receiver, and that defendants carry out their contract

with plaintiff. On February 12, 1900, defendants filed their answer, and admit the execution of contracts alleged, but deny that the statement made in the contract of sale of the value of improvements was accepted by them; allege that it was agreed that the value of said improvements should be determined according to the contracts before that time made between plaintiff and defendants; deny they appointed Frank Jewett to appraise said improvements; allege that the list handed to defendants by plaintiff is not correct, and deny the other allegations of the plaintiff's complaint; allege that, at the time defendants took possession of said mine, it was agreed that they should pay plaintiff the reasonable value of said improvements; that the same was $428.03; that they have paid plaintiff $398.53, leaving balance of $29.50; that they tendered same to plaintiff, which he refused; that after defendants had done considerable work, and driven their entries further, it was discovered that plaintiff had not worked said mine in first-class shape, as provided in the contract under which he entered upon said property, by reason of which defendants were damaged in the sum of $500.00, and they had not discovered same until after they had made the tender aforesaid; and ask judgment against plaintiff for $470 and costs.

On February 26, 1903, the cause came on for trial, and the court, having heard the evidence, found for the plaintiff, and rendered judgment as follows: "First. That the defendants herein are estopped from claiming the value of the improvements conveyed by contract dated March 4, 1899, to be less than the amount stated in said contract. Second. That the defendants are estopped from attempting to show at this time that plaintiff had not properly worked said mine, and had not worked it in first-class shape, under his lease contracts of June 25, 1897, and June 22, 1898, and from claiming damages against plaintiff for his failure to work said mine in first-class shape under his con-

tracts of June 25, 1897, and June 22, 1898. Third. The court finds that the plaintiff is entitled to recover of and from the defendants the sum of four hundred fifty-two dollars and fifty cents ($452.50). It is therefore by the court considered, ordered, and decreed that plaintiff have and recover of and from the defendants said sum of four hundred fifty-two dollars and fifty cents, with interest at the rate of 6 per cent. per annum from the date of decree, together with all costs of this case, for which let execution issue."

Appellants excepted to the first, second, and third findings of the court, and the rendition of the decree, and prayed an appeal to this court.

*Stuart & Gordon*, for appellants.

*Linebaugh Bros.* and *W. L. Richards*, for appellee.

TOWNSEND, J. Appellants make assignment of errors as follows: "First. That the defendants herein are estopped from claiming the value of the improvements conveyed by co-tract dated March 4, 1899, to be less than the amount stated in said contract. Second. That the defendants are estopped from attempting to show at this time that plaintiff had not properly worked said mine, and had not worked it in a first-class shape, under his lease contracts of June 25, 1897, and June 22, 1898, and from claiming damages against plaintiff for his failure to work said mine in first-class shape under his contracts of June 25, 1897, and June 22, 1898. Third. The court finds that the plaintiff is entitled to recover of and from the defendants the sum of four hundred fifty-two dollars and fifty cents (452.50)." Appellants, in support of their contention, cite Pomeroy on Equitable Estoppel, as follows: "Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property,

of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy. * * * One caution, however, is necessary, and very important. It would be unsafe and misleading to rely on these general requisites as applicable to every case, without examing the instances in which they have been modified or limited. (1) There must be conduct—acts, language, or silence —amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. There are several familiar species in which it is simply impossible to ascribe any intention or even expectation to the party estopped, that his conduct will be acted upon by the one who afterwards claims the benefit of the estoppel. (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse. In other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct, and to assert rights inconsistent with it."

The proof shows that appellants took possession of the mine under the contract of sale on March 4, 1899, and that on

March 8, 1899, appellee, in company with Frank Jewett, appellants' pit boss, made certain measurements, etc., and two days later "turned in a true copy of said appraisement and list of improvements and materials, with their respective values," to the appellants; and, notwithstanding appellee called at appellants, office twice each month for seven months for the purpose of receiving part payments on the balance due him, nothing was said to him by appellants indicating that his appraisement was not satisfactory, except as to the pond, objection to which was not made until "July or August." It was clearly the duty of appellants to make their objections, if any, to appellee's appraisement, known to him within a reasonable time; and, in default thereof, appellee had a right to assume that his appraisement was accepted as correct, and to rely thereon. This is true, also, as to the manner in which the mine had been worked by appellee. Appellants would not be permitted to take the goods of appellee, and the benefit of the work done by him, and, by his neglect to perform his duty, lead appellee to believe that his appraisement had been accepted as correct, and thereafter repudiate appellee's claim for the price of the goods and the value of the work done. Herman on Estoppel & Res Judicata, § 1063, says: "When a man with full knowledge, or at least with sufficient notice or means of knowledge of his rights, and of all the material circumstances of the case, freely and advisedly does anything which amounts to the recognition of a transaction, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly and deliberately permits another to deal with property or incur expense under the belief that the transaction has been recognized, or freely and advisedly abstains for a considerable lapse of time from impeaching it, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity. Amer. & Eng. Enc. of Law (2d Ed.) vol. 11, p. 421, says: "Misrepresentation or Concealment of Facts—in General. The most usual application of the doctrine

of estoppel in pais arises from the misrepresentation or conceal-
ment of material facts on the part of the person to be estopped.
Thus it is a well-settled rule of equity, which has been adopted by
the courts of law, that where A. has, by his·acts or representa-
tions, or by his silence when he ought to speak out, intentionally
or through culpable negligence induced B. to believe certain
facts to exist, and B. has.rightfully acted on this belief, so that
he will be prejudiced if A. is permitted to deny the existence of
such facts, A. is conclusively estopped to interpose a denial
thereof." In Jowers vs Phelps, 33 Ark. 465, the court said;
"Estoppels in pais depend upon facts which are rarely in any
two cases precisely the same. The principle upon which they
are applied is clear and well defined. A party who by his acts,
declarations, or admissions, or by failure to act or speak under
circumstances where he should do so, either designedly, or with
willful disregard of the interests of others, induces or misleads
another to conduct or dealings which he would not have entered
upon but for this misleading influence, will not be allowed after-
wards to come in and assert his right, to the detriment of the
person so misled." Pomeroy's Equity Jurisprudence, § 818:
"Acquiescence consisting of mere silence may also operate as a
true estoppel in equity to preclude a party from asserting legal
title and rights of property, real or personal, or rights of contract."

Counsel for appellants contend, also, that the law of
estoppel, in order to be successfully invoked, must be pleaded.
Herman, in his work on Estoppel & Res Judicata, §§ 1296,
1303, 1305, says:

"Sec. 1296. In regard to estoppels in pais or equitable
estoppels, there is a remarkable difference between this and
other kinds of estoppels; that is, that estoppels in pais may be
relied on in evidence as conclusive, without being specially
pleaded. *  *  *

"Sec. 1303. * * * For estoppels in pais are not pleaded, but are, in general, given in evidence, and will prima facie operate as effectually to estop the party under the direction of the court.

"Sec. 1305. Equitable estoppels growing out of acts in pais constitute an exception to the general rule, and are equally conclusive, whether pleaded or given in evidence. This is peculiarly true of estoppels in pais, which generally arise out of a great variety of circumstances, that cannot well be set forth with the precision and brevity required for good pleading, except where otherwise provided for by statute."

Counsel for appellants has not urged upon the court any further argument in support of his third assignment of error.

There being no error in the record, we are of the opinion that the judgment of the court below should be, and it is, affirmed.

RAYMOND, C. J., and GILL, J., concur.