**UNITED STATES of America,**
**Appellant,**

v.

**The TIMES–MIRROR COMPANY, a**
**corporation, Appellee.**

**No. 14582.**

United States Court of Appeals
Ninth Circuit.

Feb. 29, 1956.

Pope, Circuit Judge, dissented.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky, David O. Walter, Sp. Assts. to Atty. Gen., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Robert H. Wyshak, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

MacKay, McGregor, Reynolds & Bennion, Adam Y. Bennion, A. Calder MacKay, Stafford R. Grady, Los Angeles, Cal., for appellee.

Before STEPHENS, POPE and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

On October 21, 1949, taxpayer, The Times-Mirror Company, paid excess profits taxes for the calendar years 1943 and 1944 in the sum of $62,357.30 plus interest. Claims for refund on the ground that expenditures for microfilming past issues of a newspaper in an emergency were current expenses were timely filed and were rejected. On November 20, 1952, taxpayer brought action in the District Court for claimed overpayments. The pre-trial order, approved by the attorneys for the respective parties and signed by the trial judge, sets out the issue as follows:

"Were the expenditures in question ordinary and necessary business expenses, or, on the other hand, were they capital expenditures?"

The parties are in agreement that the District Court found facts substantially as follows:

"Since its first publication of the Los Angeles Times in 1881 taxpayer has maintained bound copies of its printed newspapers. For the period subsequent to 1910 taxpayer has two sets of such bound editions, one of which is kept in a vault in its building and is not used. The other is kept in the vault and is used by taxpayer's officers and employees in the day-to-day operation of its business and also by the public. For the period prior to 1910 various volumes are missing, due to a bombing of taxpayer's plant in 1910, which also damaged certain of the volumes still on hand.

"During 1943 and 1944 taxpayer had these newspapers microfilmed. Of the total of 850,579 pages microfilmed at that time, 30,579 represented issues that were missing in its library and were borrowed for microfilming. There are several volumes of which taxpayer has no copies, either in the bound set or on microfilm. A negative and three positive prints were made. The negative is kept in a vault in its building. One positive print was donated to the Los Angeles Public Library and another to the Huntington Memorial Library. The third is kept by taxpayer in its building near the bound volumes.

"The expense of microfilming was $40,000 in 1943 and $44,179.04 in 1944. Taxpayer deducted these amounts in its federal income tax and excess profits tax returns for those years as business expenses. The Commissioner disallowed the full amount for 1943 and $36,830.48 of the 1944 deduction was disallowed upon the ground that the amounts should be capitalized and recovered through amortization or depreciation deductions over a 25-year period; and as a result taxpayer was allowed an amortization deduction of $1,792.70 for the year 1944.

"Taxpayer has continued to the present time to microfilm its current newspapers, the filming being done once a month, and the expense thereof is allowed by the Commissioner as an ordinary and necessary business expense. Taxpayer also continues to bind two sets of its current newspapers.

"The court also found that on February 25, 1942, enemy aircraft were report-

ed to have flown over the Los Angeles area and to have been driven off by anti-aircraft defenses. Because of the fear of a bombing, discussions were commenced the following day between the then treasurer, secretary and comptroller of taxpayer (Mr. Downing) and his then assistant, the present treasurer and comptroller (Mr. Bowers) looking to the protection of taxpayer's newspaper files, and from those discussions evolved the determination to microfilm the newspapers.

"The microfilming of the newspapers was not done to conserve space, inasmuch as taxpayer has ample space in its present vault to accommodate two sets of its newspapers for a period of 40 to 60 years in the future, and it can then eliminate one set and thus have sufficient space for some 80 to 100 years in the future. The microfilming was not done to protect taxpayer against deterioration of its bound volumes, to be used in lieu of the bound volumes, because deterioration is not rapid, particularly with respect to the set which is not used. The microfilm is never used by taxpayer whenever there is a bound volume. It is resorted to from two to six times a year by the chief librarian of the Los Angeles Times to answer inquiries from the public regarding a period so long ago that taxpayer does not have a bound volume. It was used occasionally for two years by two members of taxpayer's editorial staff in preparing a column of what had appeared in the Times sixty years earlier, but this use occurred only when bound volumes were missing. Since 1950 the column was moved up to fifty years ago, and since bound volumes are available for all periods since 1910 the microfilm is no longer used for that purpose. The microfilm is difficult to read and cannot be used for long periods of time without resting. The photographing of the bound volumes makes reading difficult and at times impossible, because the binding was not broken and the material in the middle of the pages is not readable.

"The court finally found that the microfilming was not done to, nor did it, improve the original plant of the taxpayer, or increase, extend or prolong its useful life; that it was not done to, nor did it, increase the net or gross income of the taxpayer; that it was done solely as a means of protection against the threatened bombing, to permit taxpayer to maintain its business on the same scale, but not to increase it; that it did not create an asset or capital value; and that it was an ordinary and necessary business expense."

The question presented is: Whether the findings of the District Court that the cost to taxpayer of microfilming its file of back issues of newspapers was an ordinary and necessary business expense were supported by substantial evidence and were not clearly erroneous?

The question before us is one of mixed law and fact. There is no disagreement between the litigants as to the circumstances which are relevant to the determination. The basic facts are uncontroverted and are clearly established in the record. Congeries of facts may, however, require classification under a rule of law. In this sense, the cause before us presents a question of law. In the instant cause, the trial judge of the locality had before him a record relating to business practice in the community. Cogent arguments can be and have been made against the view which was taken. On this question of business practice in a locality in view of an emergency presented, the determination savors of the facts, and the decision of the trial court is highly persuasive. We are not convinced he was in error. There are many circumstances which support his conclusion.

The words of the statute are clear and unambiguous. There is no difficulty in understanding them. It is possible that any member of the court, with the statute as a guide, might have found to the contrary. But that is not the problem

here. This Court is only to determine whether the findings were clearly erroneous. The substantial evidence in the record sustains the findings. Taxpayer was acting in an emergency. It already possessed a library of back issues. If several copies of each of these issues had been preserved by it at the time of printing, it could have protected itself by placing these in security while the one volume necessary was kept in use. If microfilming had been in vogue when these files were made up, there would have been no problem. But taxpayer had experienced the effects of a bombing where only one set of back issues was available to it. If taxpayer could have been assured the one set of its back records would remain available, it would have no vital use for a second set or a microfilm thereof. The Commissioner correctly allows the cost of microfilming "current" records to be deducted. The microfilms of other "current" or past issues do not increase the net or gross income of taxpayer. Whether the microfilming process was applied to "current" or past issues, the result was identical. The amounts expended under the findings of the trial court were ordinary and necessary expenses in carrying on the business of a newspaper which allowed this business to be operated on the same scale and not to increase. No capital asset or capital value was created.

The findings of fact are voluminous and cover every salient point. Each is supported by substantial evidence. We find no one is clearly erroneous. If the record is considered as a whole, we do not have the impression that an improper result was reached. It might well be that another judge, hearing the same evidence, might have given more weight to certain factors and thereby have arrived at a different result. The factual arguments which might be pressed upon the District Court seem fairly evenly balanced, but such considerations do not militate against affirmance. We should not substitute our judgment on facts for that of the trial judge.

The Commissioner argues that the law creates some sort of a rigid, conceptual pattern which prevents deduction. The findings of fact dovetail into the statutory requirements and seem to exclude conformity to any other pattern. The statute in force permitted, in computing net income, allowance as deductions "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." § 23(a) (1) (A), I.R.C. 1939, 26 U.S.C.A. § 23(a) (1) (A), for taxable years 1943 and 1944. The trial court expressly found these expenditures fell under this language. It is argued, that, instead, these are capital expenditures for "permanent improvements or betterments made to increase the value of any property or estate." § 24(a) (2), I.R.C.1939, 26 U.S.C.A. § 24(a) (2). But the trial court found the microfilming did not increase the value of the property.

█ The factual findings of a trial court, even if affirmed on appeal, do not create a precedent as to similar states of fact in other courts. In affirming, appellate courts are bound by the findings in a particular case. But many states of fact will take direction from one or two circumstances. Therefore, the authorities in this field do not set an absolute standard. Each is persuasive solely by analogy.[1]

---

1. There is no analogy between the situation here outlined and one where alteration and reconstruction of a building is involved. The tests proposed in cases dealing with changes in physical properties are apt only for the solution of similar problems. They do not establish rules of law to be followed in other widely separated fields. Each case must be considered in the light of its own peculiar facts, having due regard to the language of the statute. No distinction will be attempted therefore as to Parkersburg Iron & Steel Co. v. Burnet, 4 Cir., 48 F.2d 163, or Crocker First National Bank of San Francisco v. Commissioner of Internal Revenue, 9 Cir., 59 F.2d 37, each of which affirmed in respective cases the administrative finding of the Board of Tax Appeals of that day as to physical betterments to buildings.

■■■ The size and nonrecurring nature of the expense might well be urged upon the trier of fact, as it was. It is not conclusive. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; American Bemberg Corporation v. Commissioner, 6 Cir., 177 F.2d 200, affirming per curiam 10 T.C. 361; Zimmern v. Commissioner, 5 Cir., 28 F.2d 769; Buckland v. United States, D.C., 66 F.Supp. 681. Even applied to expenses of maintaining newspaper circulation, these factors are not conclusive. Perkins Bros. Co. v. Commissioner, 8 Cir., 78 F.2d 152. See also Willcuts v. Minnesota Tribune Co., 8 Cir., 103 F.2d 947, certiorari denied, 308 U.S. 577, 60 S.Ct. 93, 84 L.Ed. 483. If the expenditure had been for increasing the circulation, no deduction could have been thus made. But it is clear that the expenditure was neither for replacement, alterations, improvements nor additions which prolong the life of property, increase its value or make it adaptable to a different use. The microfilm was of value as a spare part available for use upon destruction of the primary part. While awaiting such employment, it had but negligible value. The mere fact that it would last longer than the taxable year is not controlling. On the other hand, no asset was acquired. Taxpayer already owned the past issues in duplicate. The creation of the microfilm was only insurance against destruction of the originals.

Affirmed.

POPE, Circuit Judge (dissenting).

The outstanding and incontrovertible circumstance of this case is that the trial court misunderstood and misapplied the law which determines and defines the difference between "capital expenditures" and "ordinary and necessary expenses". Neither the trial court's conclusions nor this court's opinion even mentions the applicable legal standards, established by a long line of decisions. There is not the slightest question of fact in this case. Exactly what happened, and what was done, is not in dispute between the parties.[1] The court's key finding was its No. IX as follows:

"The microfilming was not done to, nor did it, improve the original plant of the plaintiff, or increase, extend or prolong its useful life. It was not done to, nor did it, increase the net or gross income of the plaintiff. It was done solely as a means of protection against the threatened bombing, to permit plaintiff to maintain its business on the same scale, but not increase it. It did not create an asset or capital value. It was an ordinary and necessary business expense."

This discloses a complete misapprehension of the true test as to what constitutes a capital expenditure. That test, as stated in the leading case of Parkersburg Iron & Steel Co. v. Burnet, 4 Cir., 48 F.2d 163, 165, is not whether the expenditures in question increased the productivity or capacity of the plant; it is not whether it results in ultimate or any advantage to the taxpayer; nor is it whether it increases the value of the property. "The true test is rather the nature of the expenditure in and of itself." This court said the same thing in Crocker First Nat. Bank of San Francisco v. Commissioner, 9 Cir., 59 F.2d 37, 39, by quoting from the Parkersburg opinion.[2]

---

1. The opinion itself states: "There is no disagreement between the litigants as to the circumstances which are relevant to the determination."

2. In the Parkersburg case, although the expenditures made upon taxpayer's plant were changes in its building, rather than as here, in respect to facilities in the nature of personal property, the changes were made to meet a wartime requirement of the Army for whom taxpayer was performing war contracts. The court said: 48 F.2d at page 165. "The words 'ordinary and necessary expenses,' as used in section 234(a) (1) of the statute, and also the words 'permanent improvements or betterments made to increase the value of any property or estate,' as used in section 215(b), must be given their rational, practical meaning, according to which the alterations were unquestionably 'necessary,' because compelled by the

Here the expenditures in question resulted in a permanent and practically everlasting addition to the plant facilities. They were precisely within the definition of capital expenditure in the applicable regulation,[3] which by reason of its existence through successive re-enactments of the same statutory provisions, has the effect of law. Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52.

Thus the court relied upon findings that were legally irrelevant and immaterial, for whether the microfilms in question did or did not "improve the original plant" or "increase the net or gross income" is wholly beside the point. What was done here was no different than if the taxpayer had acquired by purchase a complete file of its back issues which it found in some private library. The "nature of the expenditure" in either case is the only thing that counts.

The majority opinion fails to meet this legal question head-on, or at all. Instead it talks of "business practice in a locality in view of an emergency presented." There is no evidence whatever of any "business practice" in this locality. Nor could there be. What constitutes a capital expenditure within the meaning of an act of Congress is necessarily the same whether the expenditure is by the New York Times or the Los Angeles Times, and no local business practice can change it. But building upon this untenable premise the opinion concludes that "the determination savors of the facts", and then goes on to treat the decision as if it were one of fact, saying "The substantial evidence in the record sustains the findings. * * * Each is support-ed by substantial evidence. * * * We should not substitute our judgment on facts for that of the trial judge." I think the court cannot thus rationalize its action in affirming what is no more than a failure of the trial court to recognize and apply the established law as to the true test here applicable.

---

exigencies of the war. However, they were not 'ordinary,' but in fact extraordinary for this very reason, and they resulted in 'permanent improvements' to the property, when that phrase is interpreted in the sense that it must be assumed to be used in the statute; that is, alterations which, both by their very nature and use, are relatively permanent, although they may never in fact enhance the actual value of the property as an investment, as opposed to alterations of which both the nature and the use are relatively temporary."

3. Section 29.41-3(2) Treasury Regulations 111: "(2) Expenditures made during the year should be properly classified as between capital and expense; that is to say, expenditures for items of plant, equipment, etc., which have a useful life extending substantially beyond the year should be charged to a capital account and not to an expense account; * * *."