Cristobal C. HINES, Appellant,
v.
Joaquin A. PEREZ, Appellee.
No. 15078.

United States Court of Appeals
Ninth Circuit.
Jan. 29, 1957.

E. R. Crain, Agana, Guam, Thomas M. Jenkins, San Francisco, Cal., for appellant.

Spiegel, Turner & Stevens, Santa Monica, Cal., for appellee.

Before POPE, CHAMBERS, and BARNES, Circuit Judges.

BARNES, Circuit Judge.

Appellant Hines and appellee Perez entered into a contract on September 29, 1952, whereby Hines was to buy from Perez twenty-five shares of stock of the Island Service Company, Inc., a Guam corporation. Title was to transfer immediately, and the stock was required to be and was delivered to Hines' attorney. Hines agreed to pay the "actual value" of the shares, as of October 1, 1952.

The contract set up detailed and complicated means and methods of determining this "actual value." It is unnecessary to go into detail: suffice it to summarize as follows:

Each party designated by name an accountant, and the two were to "jointly audit the books and records" of the corporation.

"After said joint audit has been completed, Robert Wiseman shall review said audit and shall attempt to reconcile any differences that may have arisen therein. After such review the results of said audit shall be presented to Crain and Phelan and Lyle H. Turner, the attorneys for the respective parties. In the event any difference of opinion should result between said counsel as a result of said audit, either party hereto shall have the right to take said difference of opinion into any Court with jurisdiction thereof in order that said

difference may be resolved. Any such recourse to Court will be limited to resolving any difference that the parties hereto have been unable to resolve." (Tr. p. 6.)

*Accounts receivable* were to be valued in accordance with standard accounting methods, and any dispute was to be settled by majority vote of the two accountants and the auditor, Wiseman. *Stock in trade* was to be computed at delivered cost. *Fixtures* (other than mechanical fixtures attached to realty) were to be valued at cost, less depreciation, and if dispute arose, the Tax Commissioner of Guam was to be arbitrator. *Mechanical fixtures attached to the realty,* and rolling stock, were to be valued by appraisers, one to be appointed by each party.

"In the event said two appraisers are unable to agree upon the value of any asset, as of October 1, 1952, they shall select a third appraiser whose decision on the value of said assets shall be final." (Tr. p. 7.)

A complicated delayed schedule of payment was set up.

Hines received the stock, but Perez did not receive the money. Two and one-half years later, on April 19, 1955, Perez filed suit, entitling it: "Complaint to Recover on Contract." He alleged the written contract of sale; that audits were made; that the "actual value" of the stock was $40,767.57; and that demand had been made, and payment refused.

Hines moved to dismiss on the ground there was a failure to state a claim upon which relief could be granted. This was denied. Hines then answered, with the first defense similar to his motion to dismiss, and a general denial as his second defense.

A pre-trial order was entered. In it both parties stipulated (in part):

First: The contract attached to the complaint (Exhibit A) was authentic.

Second: "The parties have been unable to reconcile their differences and the entire contract is in dispute."

Jury having been waived, the Court heard the evidence, and made its findings of facts. It found that the contract was entered into, and that following the complicated procedure set up in the contract, Hines was required to pay a purchase price of $38,995.12.

The method of payment, once the price had been determined was also set up in the contract. Following it, the Court, by the Findings and Judgment, dated November 14, 1955, required Hines to pay $15,000 "on or before November 10, 1955," and the balance, with interest, in twelve monthly installments commencing February 8th, 1956. (The court in its oral opinion of October 26, 1955 had ordered Hines to pay the first installment on or before November 10th, 1955.)

Appellant Hines urges five errors:

1. The action was prematurely brought, and hence dismissable.

2. The alleged failure to find on three material issues of fact:

(a) whether counsel had made an executed oral modification of the written contract;

(b) whether the two accountants had made a "joint audit;"

(c) whether there was ever a breach of the contract.

3. The court erred in directing that interest on the judgment should commence four days prior to the date of entry of judgment.

4. Costs were improperly charged against appellant.

5. The Cause of Action contained in complaint was not proved.

We discuss each point in turn.

## I.

The argument that the action was premature rests upon appellant's position that "conditions precedent to suit" had not been met when suit was filed.

The only undetermined part of this contract was the price. The stock had been delivered promptly. The elaborate procedure set up for price deter-

mination was substantially followed. Hines' accountant took a year to complete his audit. It differed from the seller's accountant's figures, so the third accountant named in the contract, Robert Wiseman, reviewed the audit and attempted to reconcile the differences. Then the attorneys attempted to iron out the differences in opinion. They failed, as was stipulated. Under such circumstances, the contract itself gave either party the right to go to court, although the contract attempted to limit the matters that could be litigated.

"Any such recourse to Court will be limited to resolving *any difference* that the parties hereto have been unable to resolve." (Contract, par. 2, Exhibit A to Complaint.) (Emphasis added.)

The parties stipulated they had "been unable to reconcile *their differences* and *the entire contract* is in dispute." (Tr. 13, Stipulations: 2) (Emphasis added.)

1. *Direct examination of Mr. Kaneshiro,* (accountant named by Perez) :
"Q. Did you * * * make such an audit? A. Yes, sir."
"Q. Was that audit made jointly with any other person? A. The audit was made jointly with Ireneo Viray." (Tr. 41.)
*Cross-examination of Mr. Kaneshiro:*
"Q. Now in the final analysis, there was not a joint audit between you and Mr. Viray? A. There was, sir. We conducted an audit as of September 30th." (Tr. 60.)
*Direct Examination of Mr. Viray,* (accountant named by Hines) :
"Q. Now, leaving aside all the differences, other differences, between you and Mr. Kaneshiro, let me ask you if you prepared your audit pursuant to the instructions contained in the joint memorandum? A. Yes, sir.
"Q. And did you use standard accounting methods in that? A. Yes, sir.
"Q. Let me also ask you if subsesequent to your audit you had any meetings and discussions with Mr. Sherwood Wiseman and Mr. Stanley Kaneshiro in resolving any of the differences between your audit and Mr. Kaneshiro's audit? A. Yes, sir.

But says appellant, (a) the accountants' efforts were not "joint"; (b) Wiseman didn't "reconcile" the way appellant urges he should have done; (c) the two attorneys didn't even "try to reconcile any differences" in the audit; (d) the two appraisers made independent appraisals which necessarily differed, forcing the appointment of a third appraiser, who, "instead of comparing the appraisals of the other two upon disputed items, made a complete, independent appraisal of all assets," (Appellant's Brief, p. 16) contrary to the intent of the contract.

Thus, argues appellant Hines, four "conditions precedent" were not followed, and Perez cannot sue until they have been performed.

Appellant fails to read those portions of the contract, or of the court's findings, or of the evidence, that do not suit his convenience or his argument.

As to the *joint audit,* the two accountants testified they audited the books.[1]

"Q. Where were those meetings held? A. I do not remember now, sir, but I believe we held meetings more than three times.
"Q. And were you and Mr. Kaneshiro present at those meetings? A. Yes, sir.
"Q. Let me ask you were you in agreement and was Mr. Kaneshiro in agreement when Mr. Wiseman made adjustments? Were they acceptable to both of you? A. Yes.
"Mr. Turner: That is all the questions I have." (Tr. 86.)
*Re-direct examination of Mr. Viray:*
"Q. Isn't it also true that in your conferences with Mr. Wiseman, that is the conferences between Mr. Kaneshiro and yourself, all of the differences between the balance sheet of 29 September, 1952, and the one of June 23, 1954—the major differences which you have discussed and testified to—they were resolved and reconciled? A. Yes, sir.
"Q. And you accepted Mr. Wiseman's adjustments to both your balance sheet and Mr. Kaneshiro's balance sheet? A. I did.
"Q. Now, just to clear up a minor item, you said that you and Mr. Kaneshiro conducted your audits together? A. He did his separately.

Viray also gave some very significant testimony as to one reason for there being a difference of opinion between the accountants as to what should be written off as "bad debts" under "accounts receivable." [2]

Sherwood Wiseman, Chief Accountant for Jones and Querrero, and formerly Chief Accountant for the Government of Guam, testified he attempted "to reconcile differences in audits conducted by" the original two accountants; that he "had delivered to him" and he "familiarized" himself with the "balance sheets" before meeting with the accountants, that he met with them "about five times," "for the purpose of reconciling their audits."

Originally Viray's evaluation was $79,601.91, and originally Kaneshiro's evaluation was $121,228.67. After conferences with Wiseman, and after adjustments *to which the two accountants agreed,* Viray's evaluation was $155,625.95, and Kaneshiro's was $152,833.02, a difference of less than $3,000.

Thus we have no difficulty in concluding that the terms of the agreement were carried out, both as to the original joint audit, and the reconciliation thereof by Wiseman. That the two attorneys didn't try hard enough to reconcile these differences is wholly immaterial in view of the larger problem existing, pointed up by their stipulation that they had been "unable to reconcile their differences—and that the entire contract was in dispute."

Appellant's fourth "condition precedent" relates to the actions of the third appraiser, (as distinguished from the third accountant) in making a third, independent appraisal. "If such a procedure was what was contemplated by the contract," says appellant, "it would not have provided for the first two appraisals."

But the third appraiser came into being only if the first two could not agree. Perhaps the parties should have foreseen the original two appraisers could never agree, but they did not, and, each party, with legal advice, signed the contract that provided that if the original appraisers could not agree, "they shall select a third appraiser, *whose decision on said assets shall be final."* (Emphasis added.)

Because Hines does not like the manner in which the third appraiser determined the values, does not defeat his final authority.

■ We find no merit whatsoever in appellant's argument that conditions precedent existed which made the bringing of the action premature. The parties followed the procedures set up by their contracts. Appellant cannot now complain simply because the results reached were unsatisfactory to him. Perry Bros. v. Farrimond, 5 Ind.T. 59, 82 S.W. 674. The issue was presented on two occasions to the trial court. The motion was properly denied by the trial court, before trial, in view of the pleadings before the court. The issues were found against the appellant upon trial, and because it was a determination of disputed facts, we may not substitute our judgment for that of the trial court. United States v. Times-Mirror Co., 9 Cir., 231 F.2d 876; Clarke Hybrid Corn

"Q. They were both in the same physical location and they went on at the same time chronologically speaking? A. Yes.

"Q. Isn't it true he and you discussed certain items and agreed upon them, such as inventory of merchandise? A. We discussed various items and agreed on some and some we didn't." (Tr. 109.)

2. "The Court: Then is it your statement that Mr. Hines told you to do things which were not good accounting practice? A. In this particular case?

"The Court: As regards the wiping off of bad debts he told you to do things that you would not do in accordance with good accounting practice? A. It appears like that, sir.

"The Court: Very well. Questions?

"Mr. Crain: No questions.

"Mr. Turner: That is all.

"The Court: He said he did these things because Mr. Hines told him to do them and that it wasn't good accounting practice to do it." (Tr. 120.)

Co. v. Stratton Grain Co., 8 Cir., 214 F. 2d 7.

## II.

We next come to the alleged failure of the court to find on material issues.

(a) Did the parties, by the action of their attorneys (Crain and Turner) agree to orally modify the written agreement of September 29, 1952, by having the attorneys agree on Mr. Henry Schwendinger as a third appraiser. (Mr. Lothrop, for Perez, had appraised the equipment at $41,036.00; Mr. Forkner, for Hines, at $22,349.00. The Schwendinger appraisal was $11,325.00, the Norris appraisal, $34,391.00.)

Mr. Crain, counsel for Hines, testified he had agreed with Mr. Turner, counsel for Perez, on Schwendinger as the third appraiser, "after the two original appraisers made no effort to reconcile their differences"; that *after the Schwendinger appraisal*, (and by implication, after Turner had seen it was lower than either of the others), Hines refused to accept Schwendinger's appraisal because he had not been appointed by the two original appraisers, (Lothrop and Forkner), as was required by the terms of the agreement of purchase.

In his brief, counsel for appellant then lightly remarked that, "Turner's testimony, of course, was somewhat inconsistent with Crain's." That is an understatement. Turner's testimony was completely contradictory to that of Crain's.

The appraisal was dated and signed by Schwendinger (Ex. A, attached to Deposition of Schwendinger) on June 22, 1953 and that fact was so stipulated by the parties. (Tr. 193.)

Schwendinger testified he made the appraisal "on or about the 22nd day of June, 1953." (Dep. p. 11.)

The appraisal was signed and dated by Schwendinger, but the description of the articles and their evaluation "was written down * * * as I called the stuff off * * * when I made the appraisal by—I don't remember who the fellow was—one of the fellows I had over there, but I don't remember who now." [3]

"He (Schwendinger) did (the appraisal) in one day, and delivered it to Mr. Crain." (Dep. p. 26, line 8.)

Mr. Crain testified he had given Mr. Schwendinger "a list of the equipment on which blanks were left opposite the individual items."

Mr. Schwendinger did not use such a list, nor did he recollect it. "Mr. Crain just asked me to go out and appraise this bunch of material."

Turner testified that Schwendinger was suggested by Crain as a third appraiser, that he (Turner) promised to take it up with Mr. Perez, who refused to approve the use of Schwendinger because of Mr. Schwendinger's business dealings with Mr. Forkner. Turner then advised Crain the third appraiser would have to be appointed by the two original appraisers, as required under the contract. (This was subsequently done, and Mr. Norris designated.)

Thus Turner completely contradicted Crain. Turner said he had refused to approve Schwendinger prior to the appraisal.

"Q. (by the Court) You do not believe you ever saw the appraisal?
A. (Mr. Turner) I will state it as a positive fact."

Further, Mr. Turner produced Mr. Crain's letter of June 25th, 1953, which stated:

"In reference to your letter of June 21, 1953, I am unable to accept the reason you have given for re-

---

3. When questioned about his low estimate, on some of the items at least, Schwendinger explained that he had "deducted the approximate cost of shipping" the various articles of heavy equipment, "and freight is pretty expensive on it."

That reduced the value of an $800 "gas tanker," to $250. Schwendinger gave a TD–18 bull-dozer a value of $500; the three other appraisers valued it at $5500, $3000, and $4200, respectively.

fusing to honor Mr. Schwendinger as the third and final appraiser." (Plaintiff's Ex. 10.)

Thus the shoe is on the other foot. On the 21st of June, the appraisal had not been made. On that day Mr. Turner refused, pursuant to his client's wishes, to alter the original written agreement between the parties.

The letter of June 25th, 1953 written by Mr. Crain, was addressed to Mr. Turner at Agana, Guam. Presumably the letter of June 21st, 1953 from Mr. Turner was mailed there also. There is no way of telling from the record whether Mr. Crain had the letter of June 21st when he told Mr. Schwendinger to make the appraisal on June 22nd, but we can safely assume Mr. Crain had the appraisal in his possession when he wrote the letter of June 25th to Mr. Turner.

Appellant argues that "*if* the court had believed Crain's version of the occurrence it *could* have found that by oral modification Schwendinger was the third appraiser."

That may be true, but it is obvious the court did not believe Mr. Crain's version; and we find no error in his not so believing. There is no merit at all in appellant's first charged failure to find.

(b) The second alleged failure to find relates to the "joint audit" by accountants Kaneshiro and Viray. It was as "joint" an audit as was possible, considering the difference in the two accountants' familiarity with the books, their hours of work, etc. The contract was complied with, and the specific finding suggested was unnecessary in the light of the evidence and the pleadings before the court. Carr v. Yokohama Specie Bank Ltd. of San Francisco, 9 Cir., 200 F.2d 251; Life Savers Corp. v. Curtiss Candy Co., 7 Cir., 182 F.2d 4.

(c) As we view the contract it called for payment of the "actual value" for the stock. The final step of the procedure established to determine such value was resort to a judicial tribunal. If this provision was designed merely to confer on the court the task of rendering an opinion on this one matter no proper justiciable controversy would be presented thereby. Muskrat v. U. S., 219 U.S. 346, 31 S. Ct. 250, 55 L.Ed. 246. Accordingly, we assume, and the language of the agreement supports our position, that the parties contemplated simply that they would attempt to exhaust the various private means of ascertaining the actual value and that in the event of an impasse, the aggrieved party, (here Perez), would bring an action, (here to recover the purchase price). The court, in awarding judgment, would thus necessarily be compelled to determine the purchase price (which it here did) by reference to the established criterion, namely, the "actual value." It therefore entered judgment for that amount.

As appellant correctly contends, the court below did not explicitly find that there had been a breach of contract on appellant's part. Although the court should have made a specific finding on this point its failure to do so does not constitute reversible error in light of the undisputed facts of the case. The stock was delivered two and a half years before the action was filed; the private settlement formula was carried to its last step; the defendant admitted under cross-examination that he had not paid anything for the stock. Thus the breach, non-payment of the purchase price, was uncontroverted in the evidence. "In cases where the record is so clear that the court does not need the aid of findings it may waive such a defect on the ground that the error is not substantial in the particular case. That is the situation here." Hurwitz v. Hurwitz, 78 U.S.App.D.C. 66, 136 F.2d 796, 799, 148 A.L.R. 226; cf. Stone v. Parnell, 9 Cir., 239 F.2d 750. No gainful purpose would be served by remanding the matter for additional findings. The record clearly reveals the basis upon which relief was granted. In such circumstances, the ab-

sence of this particular finding, though error, is not prejudicial error.

## III.

The third point, that the judgment required interest to be paid from November 10, 1955, and not from November 14, 1955 (the date the judgment was signed) involves less than $20.00, and is of such little consequence that it need not be mentioned further. De minimis non curat lex. Porter v. Rushing, D.C., 65 F.Supp. 759, 760. This is particularly true where defendant had delayed payment of the stock for over two years.

## IV.

The costs were properly awarded to plaintiff, Perez. A plaintiff recovering is "the prevailing party," entitled to costs, even though he failed to sustain all his claim. Federal Rules of Civil Procedure, rule 54(d), 28 U.S.C.A. Ryan v. Arabian American Oil Co., D. C., 18 F.R.D. 206; Brown v. Consolidated Fisheries Co., D.C., 18 F.R.D. 433, at page 435; 6 Moore Federal Practice, ¶54-70(4) (2nd Ed.).

## V.

The argument that appellee did not recover upon the cause of action alleged in the complaint, for which appellant cites no cases in support of his position, is without merit. We believe that appellee sued for the actual value of the stock he had delivered to appellant, which value was fixed by the court when the representatives of the parties could not agree. The action was grounded on the contract and so was the judgment. No variance between the complaint and judgment exists.

Affirmed.

POPE, Circuit Judge (concurring).

I concur in all that Judge Barnes has said in the foregoing opinion, but I should like to add a statement of a further view which I have respecting the merits of the case.

I agree that appellants are wrong in asserting that there was a failure to perform what they call "conditions precedent" to the obligation to pay for the stock; but it is also my view that these elaborate and involved provisions of the contract relating to a method of determining the value of the stock were not conditions precedent at all. Long ago the Supreme Court of California, in language which has many times since been quoted with approval, observed that a court should not construe the stipulations of a contract as conditions precedent unless compelled by the language of the contract to do so since such a construction would often prevent the court from doing justice between the parties.[1]

Immediately upon the execution of the contract, the certificates for the stock were delivered to Hines. By the time the suit was started two and one-half years had elapsed during which Hines had had himself elected president and had carried on the management of the corporation and many changes had been effected in the affairs of the company. He was then in no position to rescind the contract and return the stock and indeed he made no attempt to do so. His present position that he can sit back and retain the stock and pay nothing because what he calls "conditions precedent" have not been met, would be completely untenable even if it were to be conceded that the elaborate machinery for ascertaining the value of the stock had broken down completely and never been complied with.

If these provisions of the contract mean what appellant says they do, then we have here what is in essence nothing

---

1. "Courts are disinclined, as was observed by the Court of Appeals of New York * * * to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed. The reason of this disinclination is that such a construction prevents the court from dealing out justice to the parties according to the equities of the case." Front St. M. & O. R. Co. v. Butler, 50 Cal. 574, 577.

more than an agreement to agree at some future time. If that is what these provisions for appraisal and audit mean then this part of the contract is too indefinite to enforce. But one party—Perez—the seller, has performed and has delivered the stock to Hines, who still has it. Under well settled principles of quasi contract the resulting unjust enrichment of Hines warrants a recovery by Perez of the reasonable value of the stock.

In my view the situation here is similar to that discussed by Prof. Williston in his work on contracts. In § 49 (Williston on Contracts, Rev. Ed., Vol. 1), after alluding to a bilateral agreement containing an indefinite promise and a counter promise which is definite, the author says: "It may be supposed, however, that such an agreement is performed either wholly or partly by one party or the other. Let it be supposed first that the promise which originally is definite is performed; this cannot make the indefinite promise enforcible but may give rise to a quasi contractual obligation to pay the fair value of what has been received." [2]

How a very similar situation can give rise to an obligation to pay the reasonable value of personal property actually delivered was referred to by this court in Aitchison v. Anderson, 9 Cir., 183 F.2d 922, 925, involving a contract to sell which provided that the price be fixed by a third person. This court said: "If the third person fails to fix the price under the terms of the contract, without fault of either party, the sale is thereby avoided; but if delivery of any part has been made to the buyer he must pay a reasonable price therefor." [3]

Indeed, I think the written contract itself shows on its face that the parties recognized the possibility that an obligation to pay the reasonable value of the stock would arise in the event that the appraisal and audit system collapsed and failed. As I read the contract it says that if audit and appraisal did not bring agreement, and if the attorneys could not agree, then the matter would have to be taken "into any court with jurisdiction thereof". This makes no sense to me unless it means that if the contract method of audit and appraisal does not work out, it is the contemplation of the parties that the reasonable value of the stock may be recovered by an action in an appropriate court.

The trial court has by its judgment determined the reasonable value of the stock and awarded judgment therefor. It is true that the court instead of awarding an immediate recovery of the full amount adjudged has permitted the defendant to pay in installments. But even if it were assumed that the recovery here would have to be based upon quasi contractual obligation only and a recovery in quantum meruit, yet the form of this judgment and its indulgence of payments in installments, is something of which the appellant is not in a position to complain.

2. Cf. Guam Civil Code, § 1441: "Impossible, unlawful conditions void. A condition in a contract, the fulfillment of which is impossible or unlawful, within the meaning of the article on the object of contracts, or which is repugnant to the nature of the interest created by the contract, is void." Under the statute it is the *condition* that is void, not the whole contract.

If the provision that the parties "agreed to agree" were a condition, and if it has the meaning appellant says it has, then it would be so indefinite as to be inherently impossible, and its invalidity should not affect the duty of the buyer, who has the stock, to pay its value to the extent of his unjust enrichment.

3. The rule recognizing that obligation essentially a quasi contractual one, has long been recognized wholly apart from statute. It has been incorporated bodily into the Uniform Sales Act which has been adopted in Guam. C.C. Territory of Guam, § 1730. Since we deal here with shares of stock the Uniform Sales Act, applicable to "goods" does not apply to this contract. Porter v. Gibson, 25 Cal.2d 506, 154 P.2d 703.